NATIONAL INDEMNITY COMPANY *v.* EWING ET AL.

[No. 342, September Term, 1963.]

146

*Decided June 1, 1964.*

The cause was argued before HENDERSON, PRESCOTT, HORNEY and SYBERT, JJ., and KEATING, J., Associate Judge of the Second Judicial Circuit, specially assigned.

*David K. Ebersole, Jr.* and *Herbert Burgunder, Jr.*, with whom was *F. Gray Goudy* on the brief, for appellant.

*Ernest M. Thompson,* with whom were *Thomas B. Finan, Attorney General,* and *R. Randolph Victor* on the brief, for appellees.

HENDERSON, J., delivered the opinion of the Court.

An insurance company appeals from a declaratory judgment requiring it to pay a judgment recovered against its insured, John Marth Ewing, on the ground that the injuries sustained did not arise out of the use of the automobile covered. William H. Bridge brought suit against Ewing and Sidney Howard George, who was uninsured, and recovered judgment for $10,-000 against both. National Indemnity Company disclaimed liability. In the policy issued to Ewing covering his 1956 Oldsmobile it was provided that the insurer would pay "all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile." The disclaimer was based on the claim that Bridge's injuries did not arise out of the use of the Oldsmobile.

In the declaratory judgment action the record of the trial resulting in the judgments was put in evidence by stipulation. Certain conflicts in the testimony were resolved by the jury's findings on issues submitted, and by the stipulations of the parties. The facts may be briefly summarized. On the evening of December 29, 1960, Ewing, a resident of Easton, Maryland, was at a tavern about ten miles northeast of Easton and did considerable drinking. Shortly after midnight he drove home with his friend Bridge in the back seat. There was snow on the ground but the road had been plowed out leaving snowbanks on each side. When Ewing had reached a point about two miles from Easton, he had an accident. The road at that point ran east and west, and was about 24 feet wide. According to the police officer who investigated, his car ran off the paved portion of the road on the north side, travelled about 100 feet on the shoulder or snowbank, skidded about 50 feet further, struck and broke a telegraph pole, crossed the road and finally came to rest with its front in the snowbank on the south

side. Shortly thereafter a motorist named Houston, bound towards Cordova with a friend named Warner, came up and saw the car partially blocking his lane, and a man, apparently the driver, standing in the road. At Houston's suggestion, Ewing backed his car out of the snowbank and parked it on the north side. Houston saw that the car was damaged but operable, and suggested that Ewing "try to make it" to Easton. He noted that the right rear door was open.

Houston then started to drive on, but when he had gone thirty or forty feet he heard a noise in the snowbank on the north side and saw a man sitting there. Houston stopped and assisted the man, who proved to be Bridge, to get to his feet. Apparently Bridge was not injured, although Houston testified he was mumbling and incoherent and was "either rung up or tired." Ewing came up and started to lead Bridge to the parked Oldsmobile, down the center of the road. Evidently Bridge had been thrown out of Ewing's car before it struck the pole.

Houston went back to his car and, when he saw the headlights of two cars approaching from the east, blinked his headlights. The first car slowed down and swerved around the two men in the road. The second car struck them at a point about 10 feet behind the parked Oldsmobile, and then collided with the rear of the parked car. The driver, George, had been drinking. Houston called the State police who appeared promptly with an ambulance. Houston estimated that about twenty-five minutes elapsed between the time he first came on the scene and the time the men were run down.

The jury found that Ewing was negligent in the operation of his car in running off the road, but that Bridge was not injured in the first accident; that George was negligent in striking him; that Ewing was guilty of concurrent negligence in the second accident; and that Bridge was not negligent. Under the court's instructions the judgment against Ewing was based on the theory that Ewing negligently conducted Bridge down the center of the road while Bridge was not mentally accountable for his own actions. The appellant argues that there was no causal connection between Ewing's first negligent action, which did no injury to Bridge, and the two negligent acts that

brought about the injuries upon which the judgments were predicated.

The case turns upon the proper construction of the quoted language of the policy as applied to the facts stated. There appears to be no prior Maryland case construing the words "arising out of" in a policy of this type. We have given a broad construction, however, to those words as used in the Workmen's Compensation Act, Code (1957), Art. 101, sec. 15. See *Perdue v. Brittingham*, 186 Md. 393, 402, and cases cited, and *Scherr v. Miller*, 229 Md. 538, 542. Cf. *American Auto. Ins. Co. v. Master Bldg. Supply & Lbr. Co.*, 179 F. Supp. 699 (D. C. Md.). Language in automobile liability policies, identical to that in the case before us, has been construed by the courts of other states, and it has generally been held that, while the words import and require a showing of causal relationship, recovery is not limited by the strict rules developed in relation to direct and proximate cause.

In *Schmidt v. Utilities Ins. Co.*, 182 S. W. 2d 181 (Mo.), employees placed blocks on a sidewalk to unload the covered truck, and negligently left them there. It was contended that the fall of a pedestrian, after the vehicle had departed, did not arise out of the use of the vehicle, but the court held otherwise. The same rule was applied in *Merchants Co. v. Hartford Accident & Indemnity Co.*, 188 So. 571, 572 (Miss.), where the injury was caused by poles negligently left in the road after the covered vehicle had been extricated from a ditch and had departed. The court said:

> "Our conclusion, under a policy such as is here before us, is that where a dangerous situation causing injury is one which arose out of or had its source in, the use or operation of the automobile, the chain of responsibility must be deemed to possess the requisite articulation with the use or operation until broken by the intervention of some event which has no direct or substantial relation to the use or operation,—which is to say, that the event which breaks the chain, and which, therefore, would exclude liability under the automobile policy, must be an event which bears no

direct or substantial relation to the use or operation; and until an event of the latter nature transpires the liability under the policy exists."

In *Carter v. Bergeron,* 160 A. 2d 348, 353 (N. H.), where the insured vehicle did not itself produce the injury, the court said:

"The fact that the insured vehicle was exerting no physical force upon the instrumentality which was the immediate cause of the injury, and was not itself in physical contact * * * is neither decisive of nor fatal to the plaintiff's claim of coverage. * * * It is sufficient that the use was 'connected with the accident or the creation of a condition that caused the accident * * *.' "

See also *Mullen v. Hartford Accident & Indemnity Co.,* 191 N. E. 394 (Mass.) ; *Roche v. United States Fidelity & Guaranty Co.,* 287 N. Y. S. 38, aff'd 6 N. E. 2d 410; *Manufacturers Cas. Ins. Co. v. Goodville Mut. Cas. Co.,* 170 A. 2d 571 (Pa.) ; *Fidelity and Casualty Company of New York v. Lott,* 273 F. 2d 500 (C.A. 5th) ; 7 Appleman, *Insurance Law & Practice* (perm. ed.), § 4317; 12 *Couch on Insurance* 2d (Anderson ed.), § 45.56 *et seq.;* Note, 89 A.L.R. 2d 150.

While we have found no case directly in point, we are constrained to agree with the trial court that a sufficient nexus was shown. At the time of the first accident the insured was using the covered vehicle to convey his friend, and himself, to Easton, and at the time of the second accident he was helping his friend back to the vehicle, from which he had been thrown by the negligence of the insured. The appellant's argument that Ewing owed no duty to rescue Bridge and resume the journey is beside the point. The jury's findings preclude a contention at this time that Ewing was not negligent; we are now considering only a question of cause and effect. We think the ejection and recovery of Bridge simply did not break the chain of use, any more than it would have been broken if Ewing had stopped to pick up a dropped article. In short, the negligent use of the car created a situation where Bridge was subjected

to the risk of injury, and we think this brings the case within the line of cases cited. We express no opinion as to whether the same or a different result would follow, if this were simply a tort case. Cf. *McGowans v. Howard,* 234 Md. 134.

*Judgment affirmed, with costs.*