670 A.2d 1021

## WEST AMERICAN INSURANCE COMPANY

v.

### John POPA, et al.

**No. 282, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

Feb. 1, 1996.

Certiorari Granted March 8, 1996.

74

George M. Church (Francis V. Kenneally and Church & Houff, P.A., on the brief), Baltimore, for Appellant.

Marc Seldin Rosen (Colleen A. Cavanaugh and Scanlan & Rosen, P.A., on the brief), Baltimore, for Appellees.

Argued before BISHOP, BLOOM and HOLLANDER, JJ.

BISHOP, Judge.

Appellees, John and Tommie Sue Popa, filed suit in the Circuit Court for Baltimore County to collect money allegedly owed to them under the terms of an uninsured/underinsured automobile policy issued by appellant, West American Insurance Company. Both sides moved for summary judgment. After a hearing, the court granted the Popas' motion and denied summary judgment to West American. West American noted a timely appeal.

## ISSUES

West American presents five issues, which we reorder and rephrase:

I. Does an issue of fact exist regarding whether the Popas adequately notified West American of their intention to seek uninsured motorist benefits?

II. Did the trial court err when it concluded that the Popas were "legally entitled to recover" more than $50,000 in damages even though they filed an order of satisfaction acknowledging receipt of that amount from the State of Maryland?

III. Did the trial court err when it concluded that the Popas were "legally entitled to recover" more than $50,000 in damages even though the State of Maryland has sovereign immunity for damages above $50,000?

IV. Did the trial court err when it concluded that the self-insured and government-owned vehicle exclusions in the Popas' policy are void as against public policy?

V. If the self-insured and government-owned vehicle exclusions in the Popas' policy are void, did the trial court err by holding that they are void above the $20,000/$40,000 minimum for uninsured motorist insurance?

## FACTS

On July 1, 1991, Jonathan David Popa, son of John and Tommie Sue Popa, was killed when his vehicle was struck by a

speeding Maryland State Police cruiser, driven by Trooper
Rodney Manuel. One year later, the Popas filed a wrongful
death suit against Trooper Manuel, the Maryland State Police,
and the State of Maryland in the Circuit Court for Cecil
County. A jury found Trooper Manuel negligent and assessed
$867,000 in damages against the State of Maryland, and, in
accordance with Md.Rule 2–601(a), the Clerk of the Circuit
Court entered judgment against the State in that amount.

On February 4, 1994, one week after the end of the trial, the
Popas asked West American for payment of uninsured motor-
ist benefits in the amount of $250,000 allegedly due under
their insurance policy issued by West American. The Popas'
claim was denied.

The State filed a motion to reduce the judgment to $50,000,
arguing that the Maryland Tort Claims Act waives sovereign
immunity for tortious conduct to the extent of insurance
coverage under Title 9 of the State Finance and Procurement
Article, and that the extent of such coverage at the time of the
accident was $50,000. The circuit court denied the State's
motion to reduce the damage amount, but prohibited the
Popas "from executing on their existing judgment against [the
State] for amounts in excess of $50,000."

On March 7, 1994, West American filed a motion to inter-
vene and a motion to reduce the judgment to $50,000. The
court denied those motions.

In the meantime, the Popas accepted a settlement check
from the State for $50,000. The Popas filed an order of
satisfaction acknowledging the payment and removing "judg-
ment against the [State] ... in accordance with prior Orders
of the Court and Maryland law...."

In April 1994, the Popas filed suit in the Circuit Court for
Baltimore County to force West American to pay them unin-
sured motorist benefits. After conducting a limited amount of
discovery, both sides moved for summary judgment.

In support of its motion, West American presented four
arguments. First, it asserted that the Popas' claim was

barred by certain policy exclusions. The uninsured motorist coverage provides, in relevant part:

> We will pay damages which a **covered person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of:
>
> 1. Bodily injury sustained by a **covered person** and caused by an accident; and
>
> 2. **Property damage** caused by an accident.
>
> \* \* \* \* \* \*
>
> **"[U]ninsured motor vehicle"** does not include any vehicle or equipment:
>
> \* \* \* \* \* \*
>
> 2. Owned or operated by any self-insurer under any applicable motor vehicle law.
>
> 3. Owned by any governmental unit or agency.

Second, West American argued that, even if the exclusions were void as against public policy, they were only void up to the minimum amount of coverage required by law. Third, West American asserted that, even if the exclusions were held completely void, it was not liable to the Popas because the State's sovereign immunity prevented them from being "legally entitled to recover" more than $50,000 in damages. Fourth, West American argued that, even if the exclusions were completely void and the State's sovereign immunity did not preclude the Popas from recovering more than $50,000, the order of satisfaction prevented the Popas from being "legally entitled to recover" more than $50,000.

In support of their motion, the Popas asserted that the exclusions in their policy were void as against public policy and that, notwithstanding the State's sovereign immunity and the order of satisfaction, they were "legally entitled to recover" more than $50,000 in damages.

At the hearing on those motions, West American asserted, in addition to its other claims, that the Popas had failed to generate an issue of material fact over whether West American received proper notice of the Popas' underlying suit

against the State. The trial court subsequently granted summary judgment for the Popas and denied West American's motion.

## DISCUSSION

### A. Standard of Review

In determining whether a party is entitled to summary judgment,

> the court must view the facts, including all inferences, in the light most favorable to the opposing party. The trial court will not determine any disputed facts, but rather makes a ruling as a matter of law. The standard of review, therefore, is whether the trial court was legally correct.

*Baltimore Gas & Elec. Co. v. Lane,* 338 Md. 34, 42–43, 656 A.2d 307 (1995) (citations omitted).

### B. Notice

■ Uninsured motorist coverage is unique because it predicates indemnification of the insured on a showing of fault by a third-party uninsured tortfeasor. The insurer does not pay benefits to the insured unless the uninsured tortfeasor's liability has been established. *See* Andrew Janquitto, *Uninsured Motorist Coverage in Maryland,* 21 U.Balt.L.Rev. 171, 181 (1992). Because an insurance company's liability on an uninsured motorist claim hinges on the outcome of the insured's suit against a third party, due process requires that the company be given advance notice of the suit. If the insurer is not notified, the insured party may not collect uninsured motorist benefits. *See Aetna Cas. & Sur. Co. v. Souras,* 78 Md.App. 71, 77, 552 A.2d 908 (1989) (noting that "considerations of due process require notice in order for an insurer to be bound by the outcome of the tort action.").

In the case *sub judice,* West American knew about the Popas' lawsuit against Trooper Manuel, the Maryland State Police, and the State of Maryland. The record includes the hearing transcript of the motion to intervene filed by West

American in the Popas' initial suit. At that hearing, West American's counsel made the following statement:

> [West American] knew all about the case. They have defended ... the young fellow that died in the accident in the case brought by the police officer. But that case was resolved before trial. So they knew about the case.

Because that evidence is uncontradicted, no issue of fact exists regarding West American's knowledge of the Popas' initial suit against the State.

■ West American, however, argues that, regardless of whether it knew about the underlying suit, it did not know that the Popas would be filing an uninsured motorist claim based on that suit. West American contends that it had a right to rely on the government-owned and self-insured vehicle exclusions in the policy and to expect that the Popas would not file an uninsured motorist claim. West American therefore asserts that the Popas have the burden of proving that, during the course of the underlying suit, they gave notice of their intent to file an uninsured motorist claim. Because the Popas introduced no proof on this issue, West American asks that the case be remanded for further proceedings.

West American's knowledge of the underlying suit and of the limited liability of the defendants in that suit sufficiently put it on notice that an uninsured motorist claim might later be made. Even if West American honestly did not know that a claim would be made against it, it *should have known* of the possibility; given the hostility of courts in Maryland to exclusions like the ones in the case *sub judice* (*see, infra*, § E), its reliance on those exclusions was misplaced. Therefore, we hold that, as a matter of law, West American's due process rights were not violated, and the Popas are entitled to summary judgment on the notice issue.

### C. Order of Satisfaction

Under its policy, West American is obligated to pay the Popas for damages that they are "legally entitled to recover" from an uninsured third-party tortfeasor. This language mir-

rors the uninsured motorist statute, which mandates that the insurer pay, under its uninsured motorist policies, damages the insured is "entitled to recover" from an uninsured motorist.

West American argues that, because the Popas filed an order of satisfaction acknowledging payment by the State of $50,000 and directing that judgment against the State be "removed," they are not "legally entitled to recover" more than that amount. Because the Popas have already received $50,000 from the State, West American asserts that it owes nothing under its policy.

■ To adopt West American's interpretation of "legally entitled to recover" would frustrate the remedial goals of the uninsured motorist statute. Under our reading of the law, an insured is "legally entitled to recover" damages as long as he has proven: 1) that he was damaged by the fault of an uninsured motorist, and 2) the extent of his damages. In *Reese v. State Farm Mutual Automobile Insurance Co.*, 285 Md. 548, 403 A.2d 1229 (1979), the insurance company required, in its uninsured motorist policy, that the insured party first win a judgment against the third-party uninsured tortfeasor before he could collect on the policy. Whether such a provision was void as against public policy turned on the definition of the statutory language "entitled to recover." Holding that the disputed provision was void, the Court of Appeals stated that the language "entitled to recover" is to be given a liberal interpretation. Particularly important, for our purposes, was its approval of the following language in *Winner v. Ratzlaff*, 211 Kan. 59, 505 P.2d 606, 610 (1973):

> "[T]he words 'legally entitled to recover as damages' . . . mean[s] simply that the insured must be able to establish fault on the part of the uninsured motorist which gives rise to the damages and to prove the extent of those damages."

*Reese*, 285 Md. at 555–56, 403 A.2d 1229 (*quoting Winner*, 211 Kan. 59, 505 P.2d at 610).

■ We also hold that the filing of the order of satisfaction had no effect on the Popas' entitlement to damages above

$50,000. Generally, the intent of the parties governs the scope of an order of satisfaction. *Franzen v. Dubinok,* 290 Md. 65, 75, 427 A.2d 1002 (1981). The Popas never intended that the order of satisfaction foreclose completely all of their claims above .$50,000. Rather, the order simply represented the Popas' acknowledgment that they received $50,000 and that further action against the State would be futile.

### D. Sovereign Immunity

West American also argues that the State's sovereign immunity for damages above $50,000 precludes the Popas from being "legally entitled to recover" more than that amount. Because the Popas have already received $50,000 from the State, West American claims that it owes the Popas nothing.

As an initial matter we note that, pursuant to Md.State Gov't Code Ann., § 12–104(c) (1993 Repl.), the Treasurer, after approval by the Board of Public Works, may pay damage claims which exceed $50,000. Therefore, it is possible for a claimant to receive more thàn $50,000 from the State.

Even if the State's immunity were absolute, to adopt the narrow interpretation of "legally entitled to recover" advocated by West American would frustrate the remedial goals of the legislature. Nothing in the uninsured motorist statute indicates that the legislature intended for an insurer's uninsured motorist coverage not to apply in cases where the tortfeasor enjoys sovereign immunity.

We recognize that, in *Frye v. Frye,* 305 Md. 542, 505 A.2d 826 (1986), the Court of Appeals stated that a child injured by an uninsured parent could not collect uninsured motorist benefits because the parent-child immunity prevents him from being "legally entitled to recover" from the parent. *Frye,* however, only indirectly addressed the issue we address today, and it involved parent-child immunity, not sovereign immunity.

Although parent-child immunity is clearly based on the public policy of Maryland, the exclusionary language in the

insurance policy, *sub judice*, violates the statutorily expressed public policy of Maryland. Our ruling is also in accord with many other jurisdictions. *Michigan Millers Mut. Ins. Co. v. Bourke*, 607 So.2d 418, 421–22 (Fla.1992) (tortfeasor's sovereign immunity defense to claims in excess of $100,000 per person and $200,000 per accident was not absolute; therefore, it was not available to uninsured motorist carrier in opposing payment of uninsured motorist benefits); *Tinsley v. Worldwide Ins. Co.*, 212 Ga.App. 809, 442 S.E.2d 877, 879 (1994) (in spite of the fact that tortfeasor's sovereign immunity precluded insured from obtaining the prerequisite judgment against the state, insured could collect uninsured motorist benefits from carrier); *Watkins v. United States*, 462 F.Supp. 980, 990–91 (S.D.Ga.1977) (sovereign immunity not a bar to recovery under uninsured motorists coverage where Georgia public policy, based on statute, provided for recovery against carrier for damages caused by uninsured governmental tortfeasor, even where sovereign immunity prevented prerequisite judgment against state); *Oakley v. Thomas*, 112 N.C.App. 130, 434 S.E.2d 663, 665 (1993) (limitation in Tort Claims Act did not prevent insureds from collecting under uninsured motorist carrier for damages in excess of maximum recovery allowable under Tort Claims Act); *Karlson v. City of Oklahoma City*, 711 P.2d 72, 74–75 (Okl.1985) (where liability of government tortfeasor is limited by Tort Claims Act to an amount less than insured's losses, insured may recover uninsured/underinsured motorist benefits from his carrier); *State Farm Auto. Ins. Co. v. Baldwin*, 470 So.2d 1230, 1234 (Ala.1985) (fact that *Feres* doctrine precluded insured from maintaining tort action against the government for injuries sustained when insured was involved in collision with government vehicle being operated by civil employee of the United States did not preclude recovery of uninsured motorist benefits under Alabama law; insured was "legally entitled to recover damages" against the government and its employee, within meaning of uninsured motorist statute). *Cf. Gabriel v. Minnesota Mut. Fire and Casualty Co.*, 506 N.W.2d 73 (N.D.1993).

To conclude, we hold that, in spite of the State's sovereign immunity for damages above $50,000, the Popas are "legally entitled to recover" the entire amount of their award.

## E. Validity of Exclusions

West American argues that the policy exclusions do not violate the legislatively-announced public policy of Maryland and therefore are not void. Also, it claims that, if the exclusions do violate the public policy of Maryland, they are only void up to the minimum amount of uninsured motorist coverage required by law—$20,000 per person and $40,000 per accident.

Three rules of insurance policy construction are applicable to the issue *sub judice.* The first is the principle that an insurance policy in Maryland must contain the minimum amount of coverage required by law; if a policy excludes "a particular coverage required by law, the omission or exclusion is ineffective, and the insurance policy will be applied as if [it contains] the minimum coverage." *Nationwide Mut. Ins. Co. v. United States Fidelity & Guar. Co.,* 314 Md. 131, 135, 550 A.2d 69 (1988). The second is the "corollary principle" that we will not "recognize exclusions beyond those expressly enumerated by the legislature." *Lee v. Wheeler,* 310 Md. 233, 239, 528 A.2d 912 (1987). The third is the mandate that the uninsured motorist provisions in the Maryland Code be liberally construed because of their goal of assuring recovery for innocent victims of motor vehicle accidents. *State Farm Mut. Auto. Ins. Co. v. Maryland Auto. Ins. Fund,* 277 Md. 602, 605, 356 A.2d 560 (1976).

Under the Maryland uninsured motorist statute, an insurance company selling an automobile liability policy must offer, as part of that policy, uninsured motorist coverage. *See* Md.Ann.Code art. 48A, §§ 541(c)(2)(i) and (ii) (1995 Supp.). Such coverage must pay for two types of damages: 1) those "[t]he insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in an accident arising out of the ownership, mainte-

nance, or use of such uninsured motor vehicle"; and 2) those "[t]he surviving relatives ... of the insured are entitled to recover from the owner or operator of an uninsured motor vehicle because of the death of the insured as the result of an accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle." *Id.*

The same statute defines "uninsured motor vehicle," in relevant part, as one "whose ownership, maintenance, or use has resulted in the bodily injury or death of an insured, and for which the sum of the limits of liability under all valid and collectible liability insurance policies, bonds, and securities applicable to bodily injury or death is less than the amount of coverage provided under [§ 541]." § 541(c)(1)(i). This definition encompasses three classes of automobiles: 1) those with no liability coverage; 2) those with less liability coverage than the minimum required by statute; and 3) those with less liability insurance than the outer limits of uninsured motorist coverage carried by a party injured by such a vehicle. This third class—a so-called "underinsured" vehicle—was not initially included within the statutory definition of "uninsured motor vehicle"; it was added to the definition in 1981 in order to expand the coverage. *See Waters v. United States Fidelity & Guar. Co.*, 328 Md. 700, 710–11, 713, 616 A.2d 884 (1992) (recognizing that, prior to 1981, an insured was only "allowed ... to recover from his own uninsured motorist policy when he was injured either by a tortfeasor who did not have liability insurance or by a tortfeasor who carried liability insurance in an amount less than the minimum required by the financial responsibility law[;]" by contrast, since 1981, the insured is allowed to recover from his own insurer "whenever the amount of uninsured motorist coverage purchased by the insured exceeds the amount of liability insurance carried by the tortfeasor.").

Section 541(c)(3) limited the liability of an insurer providing uninsured motorist benefits under § 541 to "the amount of that coverage less the sum of the limits under the liability insurance policies, bonds, and securities applicable to

the bodily injury or death of the insured." § 541(c)(3). This clause was also added in 1981. It turns the underinsured motorist coverage provided under § 541 into so-called "reduction" coverage, which means that the tortfeasor's liability coverage acts to reduce the limit of underinsured motorist benefits the insured can receive. *See* Andrew Janquitto, *Uninsured Motorist Coverage in Maryland,* 21 U.Balt.L.Rev. 171, 193 (1992).

The provisions in § 541 requiring insurance companies to offer uninsured motorist indemnification, the statutory definition of "uninsured motor vehicle," and the provision establishing underinsured motorist insurance under the statute as "reduction" coverage delineate the minimum amount of uninsured motorist coverage that must be furnished to an insured. At the very least, an insurer must guarantee that the insured will receive the minimum statutory amount if he is injured by someone with less liability insurance than the mandatory minimum. In addition, if the insured is injured by a tortfeasor who carries liability insurance in an amount less than the uninsured motorist coverage carried by the insured, and if the insured's damages are higher than the tortfeasor's liability insurance limits, the insured's company must pay, to the extent of the policy limits, the difference between the damage amount and the tortfeasor's liability limits.

The policy exceptions in the case *sub judice* would prevent the Popas from collecting the statutory minimum if they are damaged by a self-insured or government-owned vehicle with less liability insurance than the statutory minimum. Further, the exceptions would bar the Popas from collecting up to $300,000, the extent of the uninsured motorist coverage in their policy, if they are damaged by a self-insured or government-owned vehicle with less than $300,000 in liability coverage. Consequently, these exceptions would preclude the Popas from receiving the minimum coverage required by law. We hold them void, and adopt the following from *Higgins v. Nationwide Mut. Ins. Co.,* 291 Ala. 462, 282 So.2d 301 (1973):

[I]n the absence of any language in the act authorizing the exclusion, no exclusion of governmentally owned motor vehicles may be created in the policy. An attempt to include such in the policy provisions conflicts with the mandate of the act. The act provides such insurance protection for insureds without limitation or restriction as to whether or not the uninsured motor vehicle is governmentally owned or operated, and restricting the act's scope thwarts its purpose.

*Id.* 282 So.2d at 305.

For the same reason, we reject West American's argument that, if the self-insured vehicle and government-owned vehicle exceptions in the policy are void, they are only void up to the minimum amount required by statute. To accept this argument would be to allow West American to provide the Popas with less coverage than the minimum required by law. Again, the uninsured motorist statute provides that, if an insured is injured by a tortfeasor who carries liability insurance in an amount less than the uninsured motorist coverage carried by the insured, and if the insured's damages are higher than the tortfeasor's liability insurance limits, the insured's company *must* pay him, to the extent of the policy limits, the difference between the damage amount and the tortfeasor's liability limits. This payment must be made no matter who owns or insures the vehicle driven by the tortfeasor; no exception is made in the statute for self-insured or government-owned vehicles. Therefore, because West American has provided the Popas with $300,000 in uninsured motorist coverage, it must pay, up to $300,000, the difference between any damage award and a tortfeasor's liability limits, irrespective of the class of the vehicle driven by that tortfeasor.

This reasoning comports with the cases cited by West American. Each case cited enunciates the principle that an insurance policy exclusion held to be invalid is only invalid to the extent of the minimum coverage required by law. *See Nationwide,* 314 Md. at 135, 550 A.2d 69; *Larimore v. The American Ins. Co.,* 314 Md. 617, 622 n. 2, 552 A.2d 889 (1989); *State Farm Mut. Auto. Ins. Co. v. Nationwide Mut. Ins. Co.,*

307 Md. 631, 643, 516 A.2d 586 (1986); *Powell v. State Farm Mut. Auto. Ins. Co.*, 86 Md.App. 98, 113, 585 A.2d 286 (1991); *Walther v. Allstate Ins. Co.*, 83 Md.App. 405, 411, 575 A.2d 339 (1990). This principle is simply a corollary to the rule that an insurance company may not offer less coverage than the minimum amount required by statute.

When applied in the context of *liability* coverage, as illustrated by *State Farm, Larimore*, and *Walther*, this rule allows for the application of an otherwise invalid exception above the $20,000/$40,000 threshold. The reason for this is the legislature's intent that each insured have coverage in at least those amounts.

By contrast, when applied in the context of uninsured or underinsured motorist coverage, the principle announced in the cited cases does not necessarily allow for the application of an otherwise invalid exception above the $20,000/$40,000 minimum. The legislature intended that an insured be allowed to collect up to the limits of his uninsured motorist coverage. The difference between the liability coverage context and the uninsured motorist coverage context was implicitly recognized in *Powell*. There, we noted that if an exclusion in an uninsured motorist policy were invalid, it would only be invalid up to the $20,000/$40,000 minimum; but we immediately qualified this statement by inserting a footnote recognizing the legislative intent that an insured be paid up to the limits of his uninsured motorist coverage. *See Powell*, 86 Md.App. at 113 n. 4, 585 A.2d 286 (citing *Aetna Cas. & Sur. Co. v. Souras*, 78 Md.App. 71, 75–76, 552 A.2d 908 (1989)).

 The provisions in West American's policy that exclude government-owned vehicles from the definition of "uninsured motor vehicle" are void because they violate the legislatively-announced public policy of Maryland. Further, we hold that these exclusions are void up to the limits of the uninsured motorist coverage provided.

**JUDGMENT AFFIRMED;**
**APPELLANT TO PAY THE COSTS.**