699 A.2d 447

Sigridur E. HARRIS, et vir.

v.

NATIONWIDE MUTUAL INSURANCE COMPANY.

No. 1543, Sept. Term 1996.

Court of Special Appeals of Maryland.

Sept. 2, 1997.

2

Jerome A. Kuta, Camp Springs, for Appellants.

James E. Garland, Annapolis, for Appellee.

Argued before WENNER and HARRELL, JJ., and JOHN J. BISHOP, Judge (retired), Specially Assigned.

JOHN J. BISHOP, Judge, Specially Assigned.

Appellants, Sigridur Harris ("Mrs. Harris") and Robert Harris ("Mr. Harris"), brought suit in the Circuit Court for Prince George's County to collect money allegedly owed to them under the terms of an uninsured/underinsured motorist policy issued by appellee, Nationwide Mutual Insurance Company ("Nationwide"). Both sides moved for summary judgment. After a hearing, the court issued a memorandum opinion and order granting Nationwide's motion and denying the Harrises' motion. Mr. and Mrs. Harris noted a timely appeal. For the reasons stated herein, we reverse.

## ISSUES

Mr. and Mrs. Harris raise two issues, which we reorder and rephrase:

I. Did the circuit court err when it ruled that Sigridur Harris's injuries were not the result of an "accident," as that term is used in the applicable insurance policy?

II. Did the circuit court err when it ruled that Sigridur Harris's injuries did not arise out of the "ownership, maintenance, or use of an uninsured motor vehicle," as those terms are used in the applicable insurance policy?

## FACTS

On November 7, 1993, Sigridur Harris was walking to her car in the parking lot of the Marlow Heights Shopping Center when an unidentified man in an unidentified car drove up beside her and grabbed a purse which was hanging from her shoulder. Mrs. Harris's arm became entangled in the purse's strap, and when the driver, who was still clutching the purse, accelerated, she was knocked to the ground and dragged about 15 feet before she was released. The driver sped away with her purse, and was never caught. Mrs. Harris, however, suffered severe injuries from the incident, including a broken shoulder and broken knuckles.

At the time of the incident, Mr. and Mrs. Harris owned an uninsured motorist policy issued by Nationwide. That policy provides, in relevant part:

YOU AND A RELATIVE

We will pay compensatory damages, including derivative claims, which are due by law to you or a relative from the owner or driver of an uninsured motor vehicle because of bodily injury suffered by you or a relative, and because of property damage. Damages must result from an accident arising out of the:

1. ownership
2. maintenance; or
3. use

of the uninsured motor vehicle.

Mr. and Mrs. Harris asked Nationwide to pay them benefits under the policy for Mrs. Harris's injuries, but Nationwide

refused. Mr. and Mrs. Harris then brought suit against Nationwide for breach of contract.

At the conclusion of discovery, both sides moved for summary judgment. After a hearing, the circuit court granted Nationwide's motion and denied the Harrises' motion; according to the court, Mrs. Harris's injuries did not arise out of the "ownership, maintenance, or use of [an] uninsured motor vehicle," and were not the result of an "accident," as those terms are used in the applicable policy.

## DISCUSSION

Before we address the issues raised by Mr. and Mrs. Harris, we must make several introductory points about the interpretation of insurance policies in general, and of uninsured motorist policies in particular.

■ The General Assembly has enacted a comprehensive statutory scheme regulating insurance. Accordingly, all insurance policies issued in Maryland must be interpreted in light of the pronouncements of the legislature.

■ This is particularly true in the interpretation of uninsured motorist policies. The legislature has mandated that insurers provide a minimum amount of uninsured motorist coverage to their insureds, and insurers are strictly prohibited from contracting around the mandatory minimum. Any attempt by an insurer to provide less than the required minimum coverage will be voided by the courts. *See Nationwide Mutual Insurance Company v. United States Fidelity & Guaranty Co.*, 314 Md. 131, 135, 550 A.2d 69 (1988) (An insurance policy in Maryland must contain the minimum coverage required by law; if an insurance policy excludes "a particular coverage required by law, the omission or exclusion is ineffective, and the insurance policy will applied as if [it contains] the minimum coverage."); *Lee v. Wheeler*, 310 Md. 233, 239, 528 A.2d 912 (1987) (Courts will not "recognize exclusions [in insurance policies] beyond those expressly enumerated by the legislature."). *See also West American Insur-*

**6**

*ance Company v. Popa*, 108 Md.App. 73, 82–88, 670 A.2d 1021, *certiorari granted*, 342 Md. 391, 676 A.2d 79 (1996) (Where uninsured motorist was the State of Maryland, Court of Special Appeals refused to give literal interpretation to uninsured motorist policy which limited insureds to amount they were "legally entitled to recover" from uninsured/underinsured tortfeasor, since that policy language provided insureds with less coverage than the minimum required by the legislature; Court of Special Appeals also voided exclusion in the uninsured motorist policy for accidents with government-owned vehicles, since such an exclusion provided insureds with less coverage than the statutory minimum).

Here, the language of the applicable insurance contract mirrors that of the uninsured motorist statute. Under Md. Ann.Code art. 48A, § 541(c)(2)(i) (1994 Repl.), an insurance company must pay a policyholder all damages "[t]he insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in an accident arising out of the ownership, maintenance, or use of such uninsured motor vehicle[.]" The contract, in turn, provides:

YOU AND A RELATIVE

We will pay compensatory damages, including derivative claims, which are due by law to you or a relative from the owner or driver of an uninsured motor vehicle because of bodily injury suffered by you or a relative, and because of property damage. Damages must result from an accident arising out of the:

1. ownership
2. maintenance; or
3. use

of the uninsured motor vehicle.

Because of the rule which prohibits insurance companies from providing less than the minimum coverage mandated by the legislature, and because the language of the contract *sub judice* mirrors the language of the applicable statute, this case, although nominally a contract dispute, requires statutory interpretation in order to resolve properly the dispute be-

tween the parties. That is, we must determine the scope of the terms "accident" and "ownership, maintenance, or use of [an] uninsured motor vehicle" in § 541(c)(2)(i) of Article 48A.

## I. Meaning of "Accident"

■ The basic question here is whether the definition of the term "accident" in § 541(c)(2)(i) is broad enough to encompass the assault on Mrs. Harris. Nationwide contends that the term "accident" refers only to occurrences which are unintentional, and that the incident involving Mrs. Harris is therefore not covered because it involved an intentional act on the part of the unknown assailant. Mr. and Mrs. Harris, by contrast, argue that "accident" has a much broader meaning. They contend that the term refers to any occurrence involving an automobile, including those acts which are intentional.

In Md.Code Ann. art. 48A, § 538(a) (1994 Repl.), the legislature defines the term "accident," as that term is used in § 541. Under that definition, "[a]ccident means any occurrence involving a motor vehicle, other than an occurrence caused intentionally by or at the direction of the insured, from which damage to any property or injury to any person results."

In *Schweitzer v. Brewer*, 280 Md. 430, 374 A.2d 347 (1977), the Court of Appeals established the following principles of statutory construction:

[T]he cardinal rule of construction of a statute is to effectuate the actual intention of the legislature ... The primary source from which [a court] glean[s] the legislative intent is the language of the statute itself. When the intent is expressed in clear and unambiguous language, [a court] will carry it out, if no constitutional guarantees are impaired. Words are granted their ordinary signification so as to construe the statute according to the natural import of the language used without resorting to subtle or forced interpretations for the purpose of extending or limiting its operation. If reasonably possible the parts of a statute are to be reconciled and harmonized, the intention as to any one part being found by reading all the parts together, and none of its words, clauses, phrases, or sentences shall be ren-

dered surplusage or meaningless. Results that are unreasonable, illogical or inconsistent with common sense should be avoided whenever possible consistent with the statutory language. In other words, an interpretation should be given to statutory language which will not lead to absurd consequences.

*Id.* at 438–39, 374 A.2d 347. Applying these principles to the definition of "accident" in § 538(a), that definition would certainly appear broad enough to encompass the incident involving Mrs. Harris. Indeed, when given its plain or ordinary meaning, the phrase "any occurrence involving an automobile" refers to more than merely unintentional incidents; rather, it encompasses all incidents involving an automobile, whether intentional or unintentional.

■ This interpretation of the statute is reinforced by the interplay between §§ 541(c)(2)(v), 243H, and 243–I. Section 541(c)(2)(v) requires that the uninsured motorist coverage provided by an insurer be no "less than the coverage afforded ... under Article 48A, §§ 243 H and 243–I." Sections 243H and 243–I are the statutory successors to the provisions governing the Unsatisfied Claim and Judgment Fund, and they allow persons injured by a phantom vehicle and not otherwise covered by an uninsured motorist policy to recover up to specified amounts ($20,000 per person and $40,000 per accident) for their injuries. Under § 243H, a claimant is entitled to payment for "death ... or personal injury ... or for damage to property in excess of $250 arising out of the ownership, maintenance, or use of a motor vehicle in the State"; the section, however, fails to mention the term "accident" at all. *See* Md.Code Ann. art. 48A, §§ 243H(a)(1),(2),(3) (1994 Repl.). Given both the plain language of § 243H and its omission of the term "accident," the section is clearly broad enough to encompass intentional injuries to claimants. Such a reading is reinforced by *Frazier v. Unsatisfied Claim and Judgment Fund Board,* 262 Md. 115, 277 A.2d 57 (1971), in which the Court of Appeals held that intentional injuries were covered by identical relevant language in the statute governing the Unsatisfied Claim and Judgment Fund. *Id.* at 119–20,

277 A.2d 57. Therefore, given that §§ 243H and 243–I clearly cover intentional injuries, and that § 541(c)(2)(v) mandates that uninsured motorist coverage provided by an insurer not be less than the coverage afforded by §§ 243H and 243–I, we would be in contravention of the clearly-expressed intent of the legislature were we to hold that the uninsured motorist statute only requires coverage for injuries arising out of unintentional torts.

Nationwide, however, asks us to ignore the plain language of §§ 538(a), 541(c)(2)(v), 243H, and 243–I. According to Nationwide, we must interpret the term "accident" in light of the pronouncement of the Court of Appeals in *Forbes v. Harleysville Mutual Insurance Company*, 322 Md. 689, 589 A.2d 944 (1991) that "the purpose of uninsured motorist statutes is 'that each insured under such coverage have available the full statutory minimum to exactly the same extent as would have been available had the tortfeasor complied with the minimum requirements of the financial responsibility law.'" *Id.* at 697, 589 A.2d 944 (*quoting Nationwide Mutual Insurance Company v. Webb*, 291 Md. 721, 737, 436 A.2d 465 (1981)).

Nationwide asserts that the quoted language from *Forbes* establishes that **the** purpose of the uninsured motorist statute is to allow an insured to collect what he would have been able to collect had the uninsured tortfeasor complied with the financial responsibility law, codified in Md.Code (1992 Repl.), § 17–103 of the Transportation Article. Nationwide also asserts that the liability coverage mandated by the financial responsibility law is only for unintentional torts committed by the insured; according to Nationwide, § 17–103 does not require coverage for intentional torts. Thus, argues Nationwide, because the liability coverage mandated by the financial responsibility law is only for unintentional torts, and because the purpose of the uninsured motorist statute is to allow the insured to collect what he would have been able to collect had the tortfeasor complied with the financial responsibility law, the coverage mandated by the uninsured motorist statute is only for injuries arising from unintentional incidents.

Nationwide's argument is entirely without merit. As an initial matter, it is not at all clear that Maryland's financial responsibility law requires liability coverage for unintentional torts only. Nationwide's argument is based on § 17–103(b)(1), which requires liability coverage for "claims for bodily injury or death arising from an accident[.]" According to Nationwide, the legislature's use of the term "accident" means that it intended only to require liability coverage for unintentional torts, and not intentional ones. The problem is that neither of Maryland's appellate courts has had occasion to address the scope of the term "accident" in § 17–103. Many of the jurisdictions that have addressed the issue, however, have held that financial responsibility laws which require liability coverage for "accidents" mandate coverage for both intentional and unintentional torts. *See Nationwide Mutual Insurance Company v. Roberts*, 261 N.C. 285, 134 S.E.2d 654, 660–61 (1964); *Hartford Acc. & Indemn. Co. v. Wolbarst*, 95 N.H. 40, 57 A.2d 151, 153–54 (1948); *Wheeler v. O'Connell*, 297 Mass. 549, 9 N.E.2d 544, 546–47 (1937); *State Farm Fire and Casualty Company v. Tringali*, 686 F.2d 821, 825–26 (9th Cir.1982); *Nationwide Mutual Insurance Company v. Knight*, 34 N.C.App. 96, 237 S.E.2d 341, 343–44 (1977), *certiorari denied*, 293 N.C. 589, 239 S.E.2d 263; *Martin v. Chicago Insurance Company*, 184 Ga.App. 472, 361 S.E.2d 835, 837–38 (1987). *See also Dotts v. Taressa J.A.*, 182 W.Va. 586, 390 S.E.2d 568, 573–74 (1990) (Where financial responsibility law required that insurance policies indemnify insured against "loss from the liability imposed by law for damages arising out of the ownership, operation, maintenance, or use of [a] motor vehicle," intentional tort exclusion in policy issued under that law is void up to statutory minimum); *Hudson v. State Farm Mutual Insurance Company*, 569 A.2d 1168, 1171–72 (Del. Supr.1990) (State financial responsibility law required motor vehicle liability policy to "insure person named [in the policy] . . . against loss for the liability imposed by law for damages arising out of the ownership, maintenance or use of [a motor vehicle]"; thus, phrase in liability policy providing coverage for injuries "caused by accident" is interpreted from the

standpoint of the victim, and not the insured); *South Carolina Farm Bureau Mutual Insurance Company v. Mumford,* 299 S.C. 14, 382 S.E.2d 11, 13–14 (App.1989) (Statute requiring that automobile liability policies contain provision insuring "against loss from liability imposed by law for damages" resulted in coverage where insured deliberately crashed vehicle into truck in an attempt to commit suicide, even though policy contained an exclusion for intentional injury or property damage); *Mosley v. West American Insurance Company,* 743 S.W.2d 854, 855–56 (Ky.App.1987) (Statute required liability insurance to cover "basic reparation benefits and legal liability arising out of the ownership, operation or use of [a motor vehicle] . . ."; thus, exclusion in liability policy for intentional injuries was void). The remainder of the jurisdictions that have addressed the issue have held that such statutes only mandate coverage for unintentional torts. *See State Farm Mutual Automobile Insurance Company v. Wertz,* 540 N.W.2d 636, 641 (S.D.1995); *State Farm Mutual Automobile Insurance Company v. Pichay,* 834 F.Supp. 329, 334–36 (D.Hawai'i 1993); *Allstate Insurance Company v. Malec,* 104 N.J. 1, 514 A.2d 832, 835–36 (1986); *Nationwide Mutual Insurance Company v. Brown,* 779 F.2d 984, 989–90 (4th Cir.1985); *Utica Mutual Insurance Company v. Travelers Indemnity Company,* 223 Va. 145, 286 S.E.2d 225, 226 (1982); *Pennsylvania National Mutual Casualty Insurance Company v. Dawkins,* 551 F.Supp. 971, 972–73 (D.S.C.1982); *Snyder v. Nelson,* 278 Or. 409, 564 P.2d 681, 684–85 (1977).

The issue is a peripheral one in this case; therefore, we will not answer it here. But even if we assume *arguendo* that the financial responsibility law mandates liability coverage for unintentional torts only, that fact would not require the conclusion that the mandated coverage under the uninsured motorist statute is only for injuries arising from unintentional torts. This is so for two reasons.

The first involves the plain language of the uninsured motorist statute. Sections 538(a) and 541(c)(2)(i) require coverage for all injuries arising out of "any occurrence involving a motor vehicle[.]" Section 541(c)(2)(v), in turn, requires that

the uninsured motorist coverage provided by an insurer not be less than the coverage afforded a claimant under §§ 243H and 243–I; and the coverage afforded under §§ 243H and 243–I is clearly for injuries arising out of both intentional and unintentional incidents. Accordingly, the language of the uninsured motorist statute plainly mandates that uninsured motorist coverage extend to injuries arising out of both intentional and unintentional incidents; and we would be in violation of the clear intent of the legislature by holding otherwise, even if the financial responsibility law did mandate coverage for unintentional torts only.

■ The second reason involves the purposes underlying the uninsured motorist statute. The goal of allowing an insured to recover what he would have been able to recover had the uninsured tortfeasor complied with the dictates of the financial responsibility law is not the only goal of the uninsured motorist statute. As the Court of Appeals recognized in *Waters v. United States Fidelity & Guaranty Co.*, 328 Md. 700, 616 A.2d 884 (1992), and as this Court recognized in *Popa*, the uninsured motorist statute, through its underinsured motorist provisions, is designed to allow an insured to collect up to the limits of his uninsured motorist policy if the tortfeasor has liability coverage in a lesser amount. *See Waters*, 328 Md. at 710–11, 616 A.2d 884; *Popa*, 108 Md.App. at 85, 670 A.2d 1021. Thus, the underinsured motorist provisions of § 541 allow an insured to recover from his insurer even if the tortfeasor has complied with the dictates of the financial responsibility law.

■ This fact points to what we see as the primary goal of the uninsured motorist statute—ensuring compensation for innocent victims of automobile-related mishaps. *See Forbes*, 322 Md. at 697, 589 A.2d 944; *Lane v. Nationwide Mutual Insurance Company*, 321 Md. 165, 169, 582 A.2d 501 (1990); *Lee v. Wheeler*, 310 Md. 233, 238, 528 A.2d 912 (1987); *Pennsylvania National Mutual Casualty Insurance Company v. Gartelman*, 288 Md. 151, 157, 416 A.2d 734 (1980). This goal, in turn, weighs very heavily in favor of interpreting the

uninsured motorist statute to require coverage for injuries arising out of both intentional and unintentional torts. For this reason, it would make little sense to hold that the uninsured motorist statute only requires coverage for injuries arising out of unintentional torts, even if the financial responsibility law required liability coverage only for unintentional torts.

■ To conclude, we hold that "accident," as that term is used in § 541, encompasses both intentional and unintentional incidents. This holding is based on the clear and unambiguous language of the definition of "accident" in § 538(a), the clear and unambiguous language of §§ 541(c)(2)(v), 243H, and 243–I, and the overriding statutory goal of assuring recovery for innocent victims of automobile-related mishaps. Accordingly, the circuit court erred when it ruled that the assault on Mrs. Harris was not an "accident" within the meaning of the relevant insurance policy.

## II. Meaning of "Ownership, Maintenance, or Use"

■ The question here is whether the assault on Mrs. Harris arose out of the "ownership, maintenance, or use" of an uninsured motor vehicle. We hold that it did.

■ We begin our discussion of this issue by addressing an apparent problem with the nature of the relevant statutory language and the cases interpreting it. As we have already noted, § 541(c)(2)(i) of Article 48A requires an insurer to pay an insured for "bodily injuries sustained in an accident arising out of the ownership, maintenance, or use of [an] uninsured motor vehicle[.]" Thus, in this case, we are called upon to determine the circumstances under which an "accident" arises out of the "ownership, maintenance, or use" of an uninsured motor vehicle, pursuant to § 541(c)(2)(i).

There are no Maryland cases addressing the circumstances under which an "accident" arises out of the "ownership, maintenance, or use" of an uninsured motor vehicle, as those terms are used in § 541(c)(2)(i). As we shall see, however, there are Maryland cases which address the circumstances under which

"death ... or personal injury" arises out of the "ownership, maintenance, or use of a motor vehicle" pursuant to § 243H of Article 48A.

Given that §§ 243H and 541(c)(2)(i) both deal with compensating innocent victims of uninsured motorists, those cases interpreting § 243H would seem, at first glance, to be extremely persuasive authority in a case, such as the one *sub judice*, which requires interpretation of similar language in § 541(c)(2)(i). The obvious problem with using the § 243H decisions in the case at bar, however, is that the relevant language in § 243H is only similar, but not identical, to the relevant language in § 541(c)(2)(i). Again, § 243H requires compensation for "death ... or personal injury ... arising out of the ownership, maintenance, or use of a motor vehicle." Section 541(c)(2)(i), by contrast, requires compensation for "bodily injuries sustained in an accident arising out of the ownership, maintenance, or use or [an] uninsured motor vehicle." By inserting the term "accident" between the term "personal injury" and the phrase "arising out of the ownership, maintenance, or use of [an] uninsured motor vehicle," § 541(c)(2)(i) changes the relevant language just enough to make us hesitate to use the § 243H cases in interpreting the language in § 541(c)(2)(i); and we are therefore faced with the following question: are the circumstances under which an "accident" arises out of the "ownership, maintenance, or use" of an uninsured motor vehicle, as those terms are used in § 541(c)(2)(i), the same as the circumstances under which a "death ... or personal injury" arises out of the "ownership, maintenance, or use" of a motor vehicle under § 243H?

In light of the expansive definition given the term "accident" by the legislature (and adopted in § I of this opinion), we believe that the circumstances under which an "accident" arises out of the "ownership, maintenance, or use" of an uninsured motor vehicle under § 541(c)(2)(i) would be functionally the same as the circumstances under which a "death ... or personal injury" arises out of the "ownership, maintenance, or use" of a motor vehicle under § 243H, even without the bridging language of § 541(c)(2)(v); and the cases inter-

preting the relevant language in § 243H would therefore be very persuasive authority in this case. As we have seen, however, § 541(c)(2)(v) mandates that the uninsured motorist coverage provided by an insurer under § 541(c)(2)(i) be no "less than the coverage afforded ... under ... § 243H[.]" Thus, § 541(c)(2)(v) effectively requires that the circumstances under which an "accident" arises out of the "ownership, maintenance, or use" of an uninsured motor vehicle pursuant to § 541(c)(2)(i) be exactly the same as the circumstances under which a "death ... or personal injury" arises out of the "ownership, maintenance, or use" of a motor vehicle pursuant to § 243H; and the relevant cases interpreting § 243 H are not simply persuasive authority here, they are binding authority.

■■■ The case which provides the applicable test is *Frazier v. Unsatisfied Claim and Judgment Fund Board*, 262 Md. 115, 277 A.2d 57 (1971). In *Frazier*, a woman was driving on a Fourth of July evening, and had her five year-old son strapped into the back seat of her car, when an unidentified driver travelling in the opposite direction threw a lighted cherry bomb through one of her car's open windows and into her back seat. Shortly thereafter, the cherry bomb exploded, and the woman, distracted by the explosion, drove into a tree, injuring herself and her son. Subsequently, she brought suit on behalf of herself and her son to recover from the Unsatisfied Claim and Judgment Fund; and one of the dispositive issues in the case was whether her injuries arose out of the "ownership, maintenance, or use" of a motor vehicle.

Addressing the question, the Court of Appeals held that the answer turns on "whether the use of an automobile is directly or merely incidentally causally connected with the injury, even though the automobile itself may not have proximately caused the injury." *Frazier*, 262 Md. at 118, 277 A.2d 57. That is, if the use of a motor vehicle (or, by extension, the ownership or maintenance of a motor vehicle) is directly connected, causally, to the injury, then the injury may be said to have arisen out of the "ownership, maintenance, or use" of a motor vehicle; by

contrast, if the ownership, maintenance, or use of a motor vehicle is only incidentally connected, causally, to the injury, then the injury has not arisen out of the "ownership, maintenance, or use" of a motor vehicle. Applying this test, the Court held that the Fraziers' injuries were directly connected, causally, to the use of an automobile, and therefore allowed recovery from the Unsatisfied Claim and Judgment Fund.

The only other Maryland case addressing the circumstances under which a "death . . . or personal injury" arises out of the "ownership, maintenance, or use" of a motor vehicle pursuant to § 243H is *Elliott v. Jamestown Mutual Insurance Company, et al.,* 27 Md.App. 566, 342 A.2d 319 (1975). In *Elliott,* two drivers were involved in a minor collision, and in the aftermath of the accident, one of the drivers assaulted the other. The driver who was assaulted (Elliott) suffered injuries as a result; and because he was unable to recover from his attacker, he sought compensation from the Unsatisfied Claim and Judgment Fund.

The primary question in the case was whether Elliott's injuries arose out of the "ownership, maintenance, or use" of a motor vehicle. This Court, although taking note of the decision of the Court of Appeals in *Frazier,* cited primarily to *National Indemnity Company v. Ewing,* 235 Md. 145, 200 A.2d 680 (1964), which involved the interpretation of similar language in an automobile liability policy; and we adopted the following test from *Ewing:*

Our conclusion, under a policy such as is here before us, is that where a dangerous situation causing injury is one which arose out of or had its source in, the use or operation of the automobile, the chain of responsibility must be deemed to possess the requisite articulation with the use or operation until broken by the intervention of some event which has no direct or substantial relation to the use or operation,—which is to say, that the event which breaks the chain, and which, therefore, would exclude liability under the automobile policy, must be an event which bears no direct or substantial relation to the use or operation * * *

*Elliott,* 27 Md.App. at 573, 342 A.2d 319 (quoting *National Indemnity Company v. Ewing,* 235 Md. 145, 149–50, 200 A.2d 680 (1964)) (quoting *Merchants Co. v. Hartford Accident & Indemnity Co.,* 187 Miss. 301, 188 So. 571, 572 (1939)). Applying this test to the facts of the case, we held that Elliott's injuries did not arise out of the "ownership, maintenance or use of a motor vehicle[.]" We wrote that:

> [T]he chain of responsibility attendant the ownership or use of the Elliott vehicle and the Getson vehicle was completely broken by the intervention of the assault and battery committed upon Elliott by Getson. The proximate cause of Elliott's injuries was not the negligent use of an automobile but the brutal beating he received at the hands of Getson. Otherwise stated, there has been no showing of "a sufficient nexus" between the ownership or use of either vehicle and the injuries sustained by Elliott to warrant holding the Fund liable for the payment of any judgments the Elliotts might obtain against Getson for the injuries inflicted.

*Elliott,* 27 Md.App. at 573, 342 A.2d 319. In a dissenting opinion, however, Judge Lowe argued that the test enunciated in *Frazier* should have been applied, and that Elliott's injuries were sufficiently related to the "ownership, maintenance, or use of a motor vehicle" to allow Elliott to recover from the Unsatisfied Claim and Judgment Fund. *Id.* at 576–78, 342 A.2d 319.

Although we recognize that the test enunciated in *Elliott* is similar to the test enunciated in *Frazier,* we are obligated to follow the pronouncements of the Court of Appeals. Accordingly, the proper test to apply in this case is the one set forth in *Frazier;* and we must answer the following question: was the ownership, maintenance, or use of an automobile directly related, causally, to Mrs. Harris's injuries, or was the ownership, maintenance, or use of an automobile merely incidentally related, causally, to those injuries?

Certainly, Mrs. Harris's injuries were not directly related, causally, to the maintenance of an uninsured motor vehicle. Further, because there is no indication that Mrs. Harris's

assailant owned the automobile used in the purse snatching, we cannot say that her injuries were directly related, causally, to the ownership of an uninsured motor vehicle. We can say, however, that Mrs. Harris's injuries were directly connected, causally, to the use of an uninsured motor vehicle. Indeed, had it not been for the assailant's use of the automobile, Mrs. Harris would probably not have been knocked to the ground as forcefully as she was in the attack, and she almost certainly would not have been roughly dragged along the ground for 15 feet. Thus, if not for the assailant's use of an automobile, Mrs. Harris's injuries would have been much less extensive than they were.

Because Mrs. Harris's injuries were directly connected, causally, to the use of a motor vehicle, they arose out of the "ownership, maintenance, or use" of an uninsured motor vehicle under § 541(c)(2)(i). For this reason, the circuit court erred when it ruled that Mrs. Harris's injuries did not arise out of the "ownership, maintenance, or use" of an uninsured motor vehicle, as those terms are used in the relevant insurance policy.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED. APPELLEE TO PAY THE COSTS.**