John W. KRAUS, Jr., Administrator of the Estate of Linda E. Kraus, Deceased, Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, a corporation, Defendant.

Civ. A. No. 64–983.

United States District Court
W. D. Pennsylvania.

Sept. 14, 1966.

Joseph B. Bagley, of Bagley & Sydor, Pittsburgh, Pa., for plaintiff.

John A. Robb, of Royston, Robb, Leonard, Edgecombe & Miller, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

MARSH, District Judge.

This diversity action was brought on September 24, 1964, by a Pennsylvania citizen, the Administrator of the Estate of Linda E. Kraus, deceased, against Allstate Insurance Company, an Illinois corporation with its principal place of business in a state other than Pennsylvania.

It was alleged that plaintiff is the assignee of Eugene V. Martin, Administrator of the Estate of Arthur H. Depew, of all claims or causes of action which Arthur H. Depew, or the Estate of Arthur H. Depew, deceased, has against Allstate; and that the "cause of action which has been assigned to plaintiff against the defendant" is based upon the following facts:

On July 25, 1957, at or about 9:30 p. m., on East Ohio Street, Pittsburgh, Allegheny County, Pennsylvania, John W. Kraus, Jr., Joan Kraus, John W. Kraus, Emily P. Kraus, Frank Panza, and Martha Panza were injured, and Linda E. Kraus was killed as a result of the use of the motor vehicle owned and operated by Arthur H. Depew. At that time, Depew was insured by an automobile liability policy issued by Allstate on November 9, 1956. Allstate was notified of the accident and the injuries and death "but refused to de-

fend or represent Authur H. Depew [sic]." Suit was instituted at No. 622 October Term, 1959 (sic)[1] in the Court of Common Pleas of Allegheny County, Pennsylvania, and judgments were entered in favor of the plaintiff Administrator and the injured parties against the Administrator of the Estate of Depew in the total amount of $20,000.[2] It was finally alleged (1) that Allstate "wrongfully refused to represent or defend Authur H. Depew [sic] in this law suit"; (2) that the lawsuit "which resulted in a verdict [sic] of $20,000.00 against Eugene V. Martin, Administrator of the Estate of Authur H. Depew [sic], could have been settled within the policy limits of the said insurance policy"; (3) Allstate "is guilty of bad faith and breached its contract with plaintiff's assignee [sic] and as a result of said breach of contract and bad faith, plaintiff's assignee [sic] has a Judgment [sic] in excess of the limits of its policy to-wit the sum of $20,000.00, together with interest from February 5, 1964." [3]

Because of the liberality accorded pleadings under the federal rules, we think plaintiff has sufficiently alleged that Allstate breached its three obligations under the policy of insurance, i. e., (1) its agreement to indemnify Depew's Estate against liability for the injuries and death involved; (2) its agreement to defend the insured against any suits arising under the policy, even if such suit is groundless, false or fraudulent;[4] and (3) its obligation as a fiduciary to act in good faith and with due care in representing the interests of the insured. If the insurer is derelict in this duty, it may be liable regardless of the limits of the policy for the entire amounts of the judgments secured against the insured.[5] See: Gedeon v. State Farm Mutual Automobile Ins. Co., 410 Pa. 55, 188 A.2d 320 (1963).

In answer to the operative facts, Allstate admitted only that it was Depew's insurer at the time of the occurrence wherein certain persons were injured, but averred that the harm "was the result [of] intentional and criminal conduct of Arthur H. DePew", and that the "protection provided by the policy of insurance did not include harm resulting from the insured's intentional conduct."

Pursuant to pretrial procedure the parties entered into a Stipulation of Facts (see Appendix). Briefly, the stipulated facts establish that on July 25, 1957, Allstate had in force and effect an automobile liability insurance policy covering Arthur H. Depew, now deceased; that Depew arranged a meeting with his estranged wife on that day at 9:30 p. m., in his automobile on East Ohio Street, a public thoroughfare, and

1. The certified copy of the docket entries shows that the suit was entered at No. 622 October Term, 1958B. It was commenced by a Summons in Trespass on July 22, 1958.

2. The verdict and judgment in favor of the plaintiff Administrator was $12,000; the remainder of the $20,000 was divided among Joan Kraus, a minor, and Frank and Martha Panza. (See Appendix.)

3. We assume that the plaintiff Administrator has in effect alleged that Allstate by bad faith breached its contract with plaintiff's *assignor*, the Depew Estate, and as a result judgments totalling $20,000, which were in excess of the policy limits, were entered against the Depew Estate, for which the plaintiff Administrator, as assignee of the Estate's rights and causes of action, is entitled to collect from Allstate. (See Appendix.) Page 2 of the transcript of a conference held on February 18, 1966 indicates that the policy limits were $5,000/$10,000.

4. No items of specific damages are alleged as required by Rule 9(g), Fed.R.Civ.P., for breach of the covenant to defend, which will ordinarily be the cost of hiring a substitute counsel and other costs of defense. Gedeon v. State Farm Mutual Automobile Ins. Co., 410 Pa. 55, 188 A.2d 320 (1963). We assume there were no such costs.

5. We pass the interesting proposition that a breach of this type may not be legally assigned, for even if it could be, the plaintiff assignee has no cause of action against Allstate since the latter did not undertake to represent the interest of the Depew Estate. (See Appendix.)

then and there "intentionally detonated" an unknown quantity of dynamite which he had stolen from his employer Dravo Corporation[6] and had placed in his automobile, "thereby causing an explosion in the automobile completely destroying it, and killing his wife and himself." The means by which Depew detonated the dynamite is unknown. A pedestrian, Linda E. Kraus, the plaintiff's decedent, was also killed and several other pedestrians, who were plaintiffs in the state court action, were injured.

It was also stipulated that in the state court action, the law firm of Van Der Voort, Royston, Robb & Leonard, counsel for Allstate, entered its appearance on behalf of Eugene V. Martin, Administrator of the Estate of Arthur H. Depew. Subsequently, the state court granted this law firm leave to withdraw its appearance for the Estate:

"[W]ithout prejudice of any right claimed by interested parties to assert that Arthur H. Depew or his legal heirs or representatives or any persons claiming through him was entitled to coverage under a policy of automobile liability insurance issued to Arthur H. Depew by Allstate Insurance Company. Subsequently, Allstate Insurance Company did not participate or in any way defend Eugene V. Martin, administrator of the Estate of Arthur H. Depew."[7]

Following non-jury adjudication, verdicts and judgments were entered against the Depew Estate, as follows: For John W. Kraus, Jr., Administrator of the Estate of Linda E. Kraus, $12,000; for John W. Kraus, et al., $5,000; and for Frank Panza, et ux., $3,000. Following the entry of the judgments, Depew's Administrator assigned all rights of the Depew Estate in its cause of action against Allstate to John W. Kraus, Jr., Administrator of the Estate of Linda E. Kraus, deceased. A specimen policy and a certified copy of the docket entries at No. 622 October Term, 1958B, in the Court of Common Pleas of Allegheny County, are attached as exhibits to the Stipulation of Facts.

The policy of insurance contained the following pertinent provision, whereby the defendant became obligated to " * * pay for an insured all damages which the insured shall be legally obligated to pay because of bodily injury sustained by any person, and arising out of the ownership, maintenance or use * * * of the owned automobile * * *." The policy also contained an exclusion providing that the above liability clause did not apply to "bodily injury or property damage caused intentionally by, or at the direction of, the insured * * *." (See Appendix.)

After the Stipulation was filed, Allstate presented a Motion for Summary Judgment, requesting the court to dismiss the action for these reasons: First, the assignment is contrary to law; second, the assignor has no cause of action against the defendant in that (a) the assignor's liability did not arise from the operation, maintenance or use of an automobile, and was not therefore within the coverage of the defendant's policy, and (b) the defendant did not insure against liability created by the insured-assignor's intentional conduct, and excluded the same in its contract of insurance.

It appears from the pleadings and the Stipulation that there are no genuine issues of material fact. In the opinion of the court, summary judgment

---

6. The plaintiff joined Dravo as a defendant in the state court action. The claim against Dravo was settled. (See Appendix.)

7. The docket entries disclose that on June 22, 1959, "after argument and upon consent of Attys. for Est. of Eugene Martin, Administrator [sic]", the leave was granted. The plaintiff in his brief states: "[N]o argument concerning this matter was ever made before the Court of Common Pleas, but rather, counsel for both parties *agreed* beforehand that the Defendant could withdraw its appearance without prejudice * * *." (Emphasis supplied.)

should be entered in favor of Allstate for the second reason set forth in the motion.

At the threshhold plaintiff contends that the defendant waived its right to raise the question of coverage and lost its defense because it did not act promptly in withdrawing its appearance in the state court action, citing Gross v. Kubel, 315 Pa. 396, 172 A. 649, 95 A.L.R. 146 (1934); Kelly v. Kass, 154 Pa.Super. 267, 35 A.2d 531 (1944). This contention has no merit. The facts show that the plaintiffs in the state court action issued a summons on July 22, 1958. On August 22, 1958, defendant's counsel entered a special appearance[8] for Depew's Administrator. On September 16, 1958, defendant's counsel petitioned the court to withdraw their appearance; a rule issued returnable October 6, 1958, on which day the plaintiffs filed an answer. On March 31, 1959, defendant's counsel ruled plaintiffs to file their complaint; on April 9, 1959, the complaint was filed and service accepted; and on June 22, 1959, the matter came on for argument, and, with the consent of counsel for plaintiffs, leave to withdraw was granted.

On these facts it is clear that defendant's counsel moved with dispatch to investigate and evaluate the claim and the disclaimer was made within a month after the suit was filed. The defendant did not participate in or control the defense. The plaintiffs in the state court action were not prejudiced by any defenses made by Allstate, for there were none. See: Gross v. Kubel, supra; Antone v. New Amsterdam Casualty Co., 335 Pa. 134, 6 A.2d 566 (1939); Orcutt v. Erie Indemnity Co., 114 Pa.Super. 493, 174 A. 625 (1934). In our opinion the defendant insurer did not waive its defense of no coverage merely by the entry of an appearance which was withdrawn by leave of court on a petition filed within a month.

The stipulated facts affirmatively show that the harm inflicted upon the plaintiffs in the state court action was caused by an intentional criminal act perpetrated by Depew, the named insured in the policy. For the reasons hereinafter expressed, it is our opinion that the insurer, Allstate, incurred no liability for breach of contract in refusing to defend or cover the liability of Depew's Estate. We think it was entirely justified in so refusing.

A contract of insurance must have a reasonable interpretation such as was probably in the contemplation of the parties when it was made. Ferry v. Protective Indemnity Co. of New York, 155 Pa.Super. 266, 38 A.2d 493 (1944), citing Humphreys v. National Benefit Ass'n, 139 Pa. 264, 277, 20 A. 1047, 11 L.R.A. 564 (1891); Kaufman v. Liberty Mutual Insurance Company, 264 F.2d 863, 865 (3d Cir. 1959). In determining the scope and effect of a policy of automobile liability insurance, the purpose of the contracting parties is properly considered in determining the effect of the insurance. Couch on Insurance 2d, vol. 12, § 45:5; Appelman, Insurance Law and Practice, vol. 7, § 4317. It is not even arguable that the intended purpose of Depew and the defendant insurer was to cover the use of his automobile as a lethal bomb while parked on a public thoroughfare. To read into the contract a coverage for ownership, maintenance or use of an automobile as a receptacle for explosive purposes would permit the imagination to hold sway and write into the policy terms never dreamed of by the parties. The effect would be the creation of a new contract. The rule requiring a policy to be construed most strongly against the insurer does not warrant a court in giving the words "ownership, maintenance or use" a strained or unnatural meaning in order to find coverage for innocent victims who are subjects of enormous sympathy.

8. This was revealed by examination of the appearance entered by counsel for the Depew Estate contained in the file in the Prothonotary's office referred to in the docket entries. Of this we take judicial notice.

The harm inflicted on the pedestrians involved was not related to the ownership, maintenance or use of Depew's automobile, but to his criminal act.

■ The ownership, maintenance or use provision of the policy is qualified by the exclusion of coverage for intentional acts. When these terms are measured in accord with the understanding of persons of reasonable intelligence, they do not provide coverage for the uncontemplated use of the automobile as a chamber in which to commit murder and suicide by exploding dynamite. The use of the automobile at the time of the occurrence was not for any purpose within any reasonable contemplation of normal contracting parties. There can be no doubt that the policy in suit could not legally cover and was not intended to cover such conduct as Depew was guilty of, or to indemnify him of the consequences of his crime. Farm Bureau Mut. Automobile Ins. Co. v. Hammer, 177 F.2d 793, 795 (4th Cir. 1949). The harm to the pedestrians was not within the sum of the risks covered by the policy. See: Appelman, Insurance Law and Practice, vol. 7, § 4317.

■ But even if it be assumed that the policy contemplated the use of the automobile as disclosed by the stipulated facts, the exclusionary clause effectively exempts the insurer from liability for injuries intentionally caused by the insured.

The plaintiff argues persuasively that as to the pedestrians, Depew's act was not intentional, but was wanton and reckless, and, therefore, they are entitled to coverage. The plaintiff urges the adoption of the theory, frequently applied, which would look at the explosion from the point of view of the pedestrians and would conclude that as to them the event was an accident.

■ The parties agree that there are no Pennsylvania cases on this point, and we have not found any. In such circumstances, in a diversity case, the federal court sits as another Pennsylvania court and must apply the general law which it believes the courts of that state would probably follow upon similar facts.

■ Although plaintiff's argument advocates the majority rule, we think the Pennsylvania courts would hold in agreement with Farm Bureau Mut. Automobile Ins. Co. v. Hammer, supra, that the majority rule may not be applied where the injury is caused by a criminal act of the named insured himself. See: 33 A.L.R.2d 1027, 1031–1042.

In United Services Automobile Ass'n v. Wharton, 237 F.Supp. 255 (W.D.N.C. 1965), the named insured, as here, intended to kill his wife but in the process damaged a truck and injured the truck driver. The owner of the truck and the injured driver, as defendants in a declaratory judgment action brought by the insurer, were denied coverage.

Other authorities denying coverage for damages caused by an intentional act of the named insured are: Hill v. Standard Mut. Casualty Co., 110 F.2d 1001 (7th Cir. 1940); Weis v. State Farm Mut. Auto. Ins. Co., 242 Minn. 141, 64 N.W.2d 366, 49 A.L.R.2d 688 (1954); American Casualty Co. v. Brinsky, 51 Ohio App. 298, 200 N.E. 654 (1934). Cf. Pendergraft v. Commercial Standard Fire & Marine Co., 342 F.2d 427 (10th Cir. 1965); Rothman v. Metropolitan Cas. Ins. Co., 134 Ohio St. 241, 16 N.E.2d 417, 117 A.L.R. 1169 (1938); Sontag v. Galer, 279 Mass. 309, 181 N.E. 182 (1932).

Moreover, coverage should be denied to the named insured (and ipso facto to his estate or assignee) because he should not be able to avoid financial responsibility by shifting the penalty for his criminal act to an insurance carrier. Allstate's contract, as do those of experienced insurance companies generally, expressly excludes such conduct from the protection afforded by the policy.

■ It would appear to be against public policy to insure against financial responsibility the perpetrator of a murder and aggravated assault and batteries

of a high degree of culpability, which crimes Depew committed upon the pedestrians. Farm Bureau Mut. Automobile Ins. Co. v. Hammer, supra, 177 F.2d p. 795; Appelman Insurance Law and Practice, vol. 7, § 4252, p. 5, § 4312, p. 129. The degree of his guilt is not varied because mortal violence intended for his wife also accidentally killed another. Commonwealth v. Lyons, 283 Pa. 327, 129 A. 86; Commonwealth v. Breyesse, 160 Pa. 451, 28 A. 824 (1894). His criminal intent is transferred to the unintended victims. 18 A.L.R. 917, et seq. The principle of transferred intent is applied in civil cases. Prosser, Torts, p. 36 (3d ed.); Restatement, Torts 2d, § 16(2).

We conclude that under the stipulated facts in this case, the exclusionary clause exempts the insurer from liability for bodily injury caused by the intentional act of the named insured.

Since the plaintiff Administrator's rights, as assignee, under the policy of insurance rise no higher than the rights of the Depew Estate, his assignor, for the foregoing reasons, he cannot recover from the defendant insurer all or any part of the damages claimed in this action.

An appropriate order will be entered.

## APPENDIX

### STIPULATION OF FACTS

1. Diversity of citizenship is admitted.

2. The amount of $10,000.00 is in dispute.

3. On July 25, 1957, Allstate Insurance Company had in force an automobile liability insurance policy covering Arthur H. Depew, now deceased.

4. Depew, who had been estranged from his wife and who had on many occasions quarreled with her, arranged a meeting on July 25, 1957, with her in his automobile on East Ohio Street, a public thoroughfare in the North Side district of Pittsburgh, Pennsylvania.

5. Depew had previously stolen an unknown quantity of dynamite from his employer, Dravo Corporation, Pittsburgh, Pennsylvania.

6. Depew and his wife met on the aforementioned date at or about 9:30 P.M., in Depew's automobile.

7. Prior to the meeting, Depew had placed in the automobile the aforementioned dynamite and after a few moments in the vehicle, he intentionally detonated the dynamite thereby causing an explosion in the automobile completely destroying it, and killing his wife and himself.

8. At the time of the explosion, Linda E. Kraus, John W. Kraus, Jr., Joan Kraus, John W. Kraus, Emily P. Kraus, Frank Panza and Martha Panza were walking on the sidewalk adjacent to the Depew vehicle. As a result of the explosion, Linda E. Kraus was killed, and the other people were injured.

9. On the 22nd day of July, 1958, suit was entered for John W. Kraus, Jr., administrator of the Estate of Linda E. Kraus, deceased, and Joan Kraus, by her parents and natural guardians John W. Kraus and Emily P. Kraus and John W. Kraus, Jr., and Emily P. Kraus, his wife, individually and in their own right, and Frank Panza and Martha Panza, his wife, vs. Eugene V. Martin, administrator of the Estate of Arthur H. Depew and Dravo Corporation, a corporation, in the Court of Common Pleas of Allegheny County at No. 622 October Term, 1958B.

10. The respective Writs in Trespass were served upon the defendants.

11. Subsequently, the defendant Dravo Corporation, settled the claim against it for $1,500.00 and was released from further liability by the plaintiffs.

12. The law firm of Van Der Voort, Royston, Robb & Leonard, counsel for Allstate Insurance Company, entered its appearance on behalf of the defendant Eugene V. Martin, administrator of the Estate of Arthur H. Depew in August of 1958.

13. On September 16, 1958, a rule was granted on the plaintiff John W. Kraus, administrator of the Estate of

Linda E. Kraus, deceased, to show cause why the appearance for the defendant, Eugene V. Martin, should not be withdrawn.

14. On October 6, 1958, an Answer to Petition to Withdraw Appearance with acceptance of service was filed.

15. On September 22, 1958, a Praecipe for the General Argument List was filed.

16. Briefs were filed by the respective parties and the Court granted leave of the law firm of Van Der Voort, Royston, Robb & Leonard, who represented Allstate Insurance Company, on June 22, 1959, to withdraw their appearance entered for Eugene V. Martin, administrator of the Estate of Arthur H. Depew without prejudice of any right claimed by interested parties to assert that Arthur H. Depew or his legal heirs or representatives or any persons claiming through him was entitled to coverage under a policy of automobile liability insurance issued to Arthur H. Depew by Allstate Insurance Company. Subsequently, Allstate Insurance Company did not participate or in any way defend Eugene V. Martin, administrator of the Estate of Arthur H. Depew.

17. On February 14, 1964, a Stipulation for non-jury trial was filed by the law firm of Hess, Hess and Bagley, R. N. Pierce, Jr., attorney.

18. On February 17, 1964, a non-jury adjudication was filed Eodie Verdicts as follows: For John W. Kraus, administrator of the Estate of Linda E. Kraus against the defendant in the sum of $12,000.00; for John W. Kraus and Emily P. Kraus, guardian of Joan Kraus against the defendant in the sum of $5,000.00; for Frank Panza and Martha Panza against the defendant in the sum of $3,000.00.

19. On February 24, 1964, verdict fee "$3.00" paid by plaintiffs' attorney;

judgment entered on the verdict in favor of John W. Kraus, Jr. against the defendant Eugene V. Martin, administrator of the Estate of Arthur H. Depew for $12,000.00; and for John W. Kraus, et al., for $5,000.00; and for Frank Panza et ux., $3,000.00 against the defendant Eugene V. Martin, administrator of the Estate of Arthur H. Depew.

20. Following the entry of the judgment, Eugene V. Martin, administrator of the Estate of Arthur H. Depew assigned all rights of the Estate and its cause of action against Allstate Insurance Company to John W. Kraus, Jr., administrator of the Estate of Linda E. Kraus, deceased.

## EXHIBITS

The following Exhibits are attached hereto:

\*    \*    \*    \*    \*

*EXHIBIT B*

Statement of the relevant portions of the aforementioned policy particularized.

\*    \*    \*    \*    \*

## EXHIBIT B

*Section I*—Part 1. Automobile Liability Insurance. (Page 1)

Coverage B. Property Damage.

Allstate will pay for an insured all damages which the insured shall be legally obligated to pay because of:

A. bodily injury sustained by any person, and arising out of the ownership, maintenance or use, including loading and unloading, of the owned automobile or a non-owned automobile.

*Section I*—Part 1. Exclusions—what this Part of the policy does not cover. (Page 3)

This Part 1 does not apply to:

6. bodily injury or property damage caused intentionally by, or at the direction of, the insured; or