740 A.2d 50

Lamon Michelle WRIGHT, et vir

v.

ALLSTATE INSURANCE COMPANY.

No. 6261, Sept. Term, 1998.

Court of Special Appeals of Maryland.

Nov. 1, 1999.

David A. Schiller, Rockville, for appellants.

Andre M. Forte (Amy Leete Leone and McCarthy, Wilson & Ethridge, on the brief), Rockville, for appellee.

Argued before THIEME, KENNEY and JAMES S. GETTY (Ret'd, Specially Assigned), JJ.

JAMES S. GETTY, Judge (Ret'd, Specially Assigned).

The issue in this case is whether Mr. and Mrs. Ronnell Wright, who were shot by an acquaintance while driving in their car, may recover for their injuries under the uninsured motorists provisions of their liability insurance policy.

### Background

On September 22, 1995, the Wrights and their three-year-old child were driving on Sonar Road in Prince George's County. They stopped at a stop sign. While they were in a stationary position, a man emerged from a parked vehicle to the side of them and began shooting at the occupants in the car. Mr. Wright was struck by two bullets; his wife was struck by one. After the gunshots were fired, the shooter hurried to his vehicle and left the scene.

Mrs. Wright attempted to drive from the passenger seat toward Southern Maryland Hospital, because her husband was unconscious. Within a short distance from the area where the shooting took place, the car went off the road and struck a tree, causing additional injuries to Mr. and Mrs. Wright. The child was not injured.

The Wrights recognized the shooter as an acquaintance named "PeeWee" Erskine Caldwell. Ironically, on August 8, 1995, Mr. Wright was proceeding down Daingerfield Road when a car pulled alongside the Wright vehicle and the driver began shooting at Mr. Wright. After being struck in the shoulder by a bullet, Wright lost control of his car and veered

off the road, striking a tree. The driver/shooter on that occasion was the same "PeeWee" Erskine Caldwell.

## Discussion

At the time of the second shooting, the Wrights' vehicle was insured by Allstate Insurance Company. In accordance with Maryland law, the policy issued provided uninsured motorists coverage. Specifically, the policy provided:

> We will pay damages for bodily injury sickness, disease or death, or property damage which an insured person is legally entitled to recover from the owner or operator of an uninsured auto. Injury must be caused by accident and arise out of the ownership, maintenance or use of an uninsured auto.

Under the above provision, the Wrights claim that they are entitled to uninsured motorists coverage.

The Wrights filed suit against Allstate to recover for their injuries. Cross-motions for summary judgment were filed on the sole issue of whether the injuries to the Wrights resulted from the uninsured motorist's "use" of his motor vehicle within the terms of the policy. After oral argument, Judge William D. Missouri held that the accident did not result form the shooter's "use" of a motor vehicle. The Wrights appealed.

## The Law

In this case, there were no material facts in dispute. Our concern, therefore, is whether the trial court was legally correct in granting summary judgment for Allstate. *See Lynx, Inc. v. Ordnance Prods., Inc.*, 273 Md. 1, 327 A.2d 502 (1974).

■ The applicable test for determining when an injury arises out of the *"use"* of an automobile was set forth in *Frazier v. Unsatisfied Claim and Judgment Fund Bd.*, 262 Md. 115, 277 A.2d 57 (1971). The Court of Appeals explained that whether an injury arose out of the use of an automobile hinges on "whether the use of an automobile is directly or merely incidentally causally connected with the injury, even

though the automobile itself may not have proximately caused the injury." *Id.* at 118, 277 A.2d 57.

In *Frazier*, a woman and her son were traveling in a convertible vehicle on the Fourth of July. An occupant of another car driving in the opposite direction threw a lighted firecracker into the convertible. The explosion and her son's cries distracted the driver, causing her to crash into a tree.

The Court held that, for the purpose of determining whether leave to sue the Board should have been granted, the injuries under the facts of the case did arise out of the ownership, operation, or use of an unidentified motor vehicle. The Court also noted a reluctance to be bound by decisions involving the interpretation of insurance contracts, the distinction being that the Unsatisfied Claim and Judgment Act is remedial in character and must be liberally construed with due regard for the protection of the Fund. (Citing *Wheeler v. Unsatisfied Claim and Judgment Fund*, 259 Md. 232, 239, 269 A.2d 593 (1970).)

The case of *Harris v. Nationwide Mutual Insurance Company*, 117 Md.App. 1, 699 A.2d 447 (1997), is also instructive. In that case, Sigridur Harris was walking to her car at a shopping center when a stranger drove alongside her and grabbed her purse. Ms. Harris's arm became entangled in the strap of the purse and she was dragged approximately fifteen feet as the vehicle sped away with her purse. The driver was never apprehended. Ms. Harris sought uninsured motorist benefits from her insurer, Nationwide, to compensate her for the serious injuries she sustained in the incident. Nationwide refused payment. The insurer contended that the injuries did not arise out of the "ownership, maintenance or use" of an uninsured motor vehicle, and there was no "accident" because the assault on Ms. Harris was intentional. The trial court agreed and granted Nationwide's motion for judgment.

Ms. Harris appealed and this Court, in an opinion authored by Judge John J. Bishop, Jr., reversed the ruling of the trial court. We dismissed the notion that only unintentional acts constitute an accident. Sec. 19–501(c) of the Insurance Arti-

cle, Md.Code (1997), formerly Article 48A, sec. 538(a), defines a motor vehicle accident as follows:

> *(c) Motor vehicle accident*—(1) "Motor vehicle accident" means an occurrence involving a motor vehicle that results in damage to property or injury to a person.
>
> (2) "Motor vehicle accident" does not include an occurrence that is caused intentionally by or at the direction of the insured.

Thus, the intention of the Legislature was clear and unambiguous. On the agreed facts of *Harris,* the statute clearly supported the claim of a motor vehicle accident.

On the second issue in *Harris,* this Court also held that the injuries sustained by Ms. Harris were directly connected, causally, to the use of an uninsured vehicle. The use of the vehicle to commit the robbery and simultaneously flee from the scene established that the vehicle was directly, not incidentally, connected with the injuries to Ms. Harris.

The case *sub judice* differs materially from either *Frazier* or *Harris.* Judge Missouri concluded that no substantial nexus existed between the injuries sustained by the Wrights and the use of the automobile driven by the assailant.

■ At some point in time before the incident, PeeWee drove to the intersection and waited for the Wrights to arrive at the stop sign. Once the Wrights arrived, PeeWee came toward their car and began shooting at them from an estimated distance of sixty to two hundred feet. He returned to his car and drove away. PeeWee's vehicle was simply a means of transportation to an area where he predicted the Wrights would appear. This is in stark contrast to the role of the vehicles in *Frazier* and in *Harris,* where the vehicles played a prominent role in the commission of the crimes. The Wrights were injured because PeeWee shot them, not because he was using a car. Ironically, this was his second or third attempt to murder Mr. Wright by shooting him while he was driving his car.[1] We agree that the use of the car was incidental to the

---

1. Wright testified that he was told by a friend that PeeWee believed Wright was a police informant, and that he was responsible for a police raid on Pee Wee's chop shop and car theft operation.

attempt to kill Wright. It was not directly, causally, connected to the incident.

Were we to hold otherwise, as Allstate points out, any victim of a crime whose assailant fled the scene of a crime in a car could seek recovery from his own insurer if he had a policy containing uninsured motorists coverage. Uninsured motorists coverage was never intended to cover the type of injuries presented by the facts of this case. The primary purpose of sec. 19–509 of the Insurance Article is to assure financial compensation to the innocent victims of motor vehicle accidents who are unable to recover from financially irresponsible uninsured motorists. *Pennsylvania National Mutual Casualty Ins. Co. v. Gartelman,* 288 Md. 151, 416 A.2d 734 (1980).

In formulating the rule on coverage turning on whether the use of an automobile is directly or merely incidentally causally connected with the injury, the Court in *Frazier* noted one Maryland case and three cases from other jurisdictions. In *Commercial Union Ins. Co. of New York v. Hall,* 246 F.Supp. 64 (1965), a man named Hall was injured by the driver of another car who blocked Hall's car and then physically assaulted him. In the ensuing lawsuit, the issue was whether Hall's injuries arose "out of the use" of his attacker's car. The Court held that although the car was used to force Hall off the road, it was incidental to the events that followed.

A second case cited by the Court in *Frazier* was *Kraus v. Allstate Ins. Co.,* 258 F.Supp. 407 (1966). In that case, a car parked on a city street exploded. Several pedestrians were injured and one woman was killed by the blast. The Court held that the *use* of the vehicle as a detonating device was not within the contemplation of the contracting parties.

In contrast, the Court of Appeals cited *National Indemnity Co. v. Ewing,* 235 Md. 145, 200 A.2d 680 (1964), as an example of a case in which injuries were "directly causally connected" by the use of an automobile. Two men in a car had been drinking heavily. The driver lost control of the car, causing the passenger to be ejected. As the driver was helping the passenger back into the car, a second vehicle struck them.

The Court of Appeals held that the passenger's injuries arose "out of the use" of the driver's vehicle. *Ewing* is easily distinguishable from the present case. PeeWee's vehicle played no part in the injuries except for transportation to the scene, and no collision occurred in the present case.

In the final case cited by the Court of Appeals, a person injured by slipping on oil leaking from a parked car was held to be within the policy provisions governing *use* of the vehicle. *See Mullen v. Hartford Accident & Indemnity Co.,* 287 Mass. 262, 191 N.E. 394 (1934).

A shooting case somewhat similar to the present case was resolved by the United States Court of Appeals for the Fourth Circuit in *Nationwide Mutual Ins. Co. v. Brown,* 779 F.2d 984 (S.C. 4th Cir.1985). In that case, Brown directed his employee, Proctor, to use a customer's truck and meet Brown in a nearby town. Brown said he wanted to locate his estranged wife and, if she refused to talk to him, he would kill her. The two men located Brown's wife and child in her car. Brown grabbed the steering wheel from Proctor and intentionally collided with his wife's vehicle. He approached his wife's car and shot and killed her.

In a suit by the Administrator of Mrs. Brown's estate, several insurance policies were in effect providing general liability coverage for Mrs. Brown's car and for the customer's truck. Those policies were issued by Nationwide. A third policy, issued by Insurance Company of North America (INA), was a liability policy issued to Mr. and Mrs. Brown, providing uninsured motorist coverage and personal injury protection for both parties.

Both the Nationwide policy on the customer's truck and the INA policy required that the injuries for which coverage is claimed arise out of the ownership, maintenance or use of an automobile. The Court of Appeals for the Fourth Circuit affirmed the United States District Court's decision that the policies provided no coverage for the shooting. The Court of Appeals stated:

Cases construing the phrase "arising out of the . . . use of a motor vehicle" uniformly require that the injured person establish a causal connection between the use of the motor vehicle and the injury. . . . Such causal connection must be more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use of the vehicle. . . . An assault by an armed assailant upon the driver of a car is not the type of conduct that is foreseeably identifiable with the normal use of a motor vehicle.

779 F.2d at 989 (quoting *Detroit Automobile Inter–Ins. Exchange v. Higginbotham*, 95 Mich.App. 213, 290 N.W.2d 414 (1980) (citations omitted)).

### *Summary*

The majority of courts that have considered whether personal injuries from physical assaults by insured vehicle drivers or passengers arose out of the *use* of the vehicle have found no causal relation between the use of the vehicle and injuries sustained by physical assaults. *Accord: Govt. Employees Ins. Co. v. Melton*, 357 F.Supp. 416 (1972), *aff'd*, 473 F.2d 909 (4th Cir.1973); *Detroit Automobile Inter–Ins. Exchange v. Higginbotham, supra; Love v. Farmers Ins. Group*, 121 Ariz. 71, 588 P.2d 364 (1978); *Aetna Casualty and Surety Co. v. Goldman*, 374 So.2d 539 (Fla.App.1979); *Nationwide Mutual Ins. Co. v. Knight*, 34 N.C.App. 96, 237 S.E.2d 341 (1977).

We agree with Judge Missouri that the use of the uninsured vehicle by PeeWee was incidental to the cause of the injuries sustained by the Wrights.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**