**Donald Wright SIGMUND, Plaintiff,**

v.

**PROGRESSIVE NORTHERN INSURANCE COMPANY, Defendant.**

**No. CIV.A.05–0404(ESH).**

United States District Court, District of Columbia.

May 31, 2005.

---

Patrick M. Regan, Jonathan E. Halperin, Regan Halperin & Long, PLLC, Washington, DC, for Plaintiff.

Brett Anthony Buckwalter, Paul M. Finamore, Niles, Barton & Wilmer, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

HUVELLE, District Judge.

This case presents the novel question of whether a person can recover under the uninsured motorist (UM) provision of the insurance policy on his father's vehicle for injuries he sustained as a result of the explosion of bombs placed in that same vehicle by his half-brother. Defendant claims that plaintiff's suit fails to state a claim upon which relief can be granted because plaintiff is not entitled to uninsured motorist benefits pursuant to the terms of the insurance contract. For the reasons stated below, the Court agrees with defendant's arguments and dismisses plaintiff's complaint.

## BACKGROUND

On July 12, 2002, plaintiff was given permission to operate a vehicle owned by his father, Donald W. Sigmund. (Compl.¶¶ 7, 9.) After plaintiff entered the driver's door and attempted to operate the vehicle, it exploded as a result of two bombs placed in the vehicle by plaintiff's half-brother, Prescott Sigmund. (Compl.¶¶ 9, 11.) As a result of the bombing of the vehicle, plaintiff sustained severe and permanent injuries. (Compl.¶¶ 13–14.) At all times relevant to this case, the vehicle was insured by defendant for both liability and UM purposes. (Compl.¶ 10.) Prescott Sigmund pled guilty to the bombing and does not have any type of insurance that would cover plaintiff's injuries. (Compl.¶ 18). Plaintiff presented a claim to defendant for UM insurance coverage for the injuries sustained in the bombing, but defendant refused to pay. (Compl.¶¶ 19–20.) Plaintiff brings this suit complaining of defendant's breach of the UM provisions of the insurance contract with his father. (Compl.¶¶ 15–20.)

## ANALYSIS

In the District of Columbia automobile insurance benefits are governed by statute, which sets certain requirements for all insurance contracts in D.C., *see* D.C. CODE ANN. §§ 31–2401 *et seq.*, and by the terms of the insurance contract between the insurer and insured.

■■■ As the parties appear to agree, this case must be resolved under District of Columbia law. *See Keefe Co. v. Americable Int'l, Inc.*, 219 F.3d 669, 669–70 (D.C.Cir.2000). A federal court exercising diversity jurisdiction, however, is not to "make bold forays into terra incognita in order to chart the way to justice, but . . . faithfully to apply the law of the state that the courts of the jurisdiction in which we sit, the District of Columbia, would apply . . . ." *Tidler v. Eli Lilly & Co.*, 851 F.2d 418, 424 (D.C.Cir.1988); *see also Dayton v. Peck, Stow & Wilcox Co.*, 739 F.2d 690, 694–95 (1st Cir.1984) ("[W]e see no basis for even considering the pros and cons of innovative theories . . . . We must apply the law of the forum as we infer it presently to be, not as it might come to be."). If there is no D.C. law on point, "the District of Columbia courts should look to the law of Maryland for guidance . . . ."[1] *Conesco Indus., Ltd. v. Conforti & Eisele, Inc.*, 627 F.2d 312, 316 (D.C.Cir.1980); *see Athridge v. Aetna Cas. & Sur. Co.*, 163 F.Supp.2d 38, 45 (D.D.C.2001).

## I. Legal Standard

■■■ Defendant moves to dismiss the complaint under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief may be granted or, alternatively, for summary judgment. The allegations in plaintiff's complaint are presumed true and all reasonable factual inferences should be construed in plaintiff's favor. *Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc.*, 52 F.3d 373, 375 (D.C.Cir.1995); *Phillips v. Bureau of Prisons*, 591 F.2d 966, 968 (D.C.Cir.1979). In this case, the facts are undisputed and the only issue is one of contract interpretation. "[W]here [insurance] contract language is not ambiguous, summary judgment is appropriate . . . ." *Byrd v. Allstate Ins. Co.*, 622 A.2d 691, 693 (D.C.1993). An insurance contract is not "ambiguous merely because the parties do not agree on the interpretation of the contract provision in question." *Id.* at 694 (citation omitted). The question of whether an insurance contract is ambiguous is a one of law, reviewed de novo by the court. *See Sacks v. Rothberg*, 569 A.2d 150, 154 (D.C.1990).

## II. Uninsured Motorist (UM) Benefits

■■■ The principles governing the construction of an insurance contract can be succinctly stated. "An insurance policy is a contract between the insured and the insurer, and in construing it we must first look to the language of the contract." *Cameron v. USAA Prop. & Cas. Ins. Co.*, 733 A.2d 965, 968 (D.C.1999). "[W]here insurance contract language is not ambiguous, . . . 'a written contract duly signed and executed speaks for itself and binds the parties without the necessity of extrinsic evidence.'" *Byrd*, 622 A.2d at 693 (quoting *Holland v. Hannan*, 456 A.2d 807, 815 (D.C.1983)). If the language is ambiguous, any "doubt should be resolved in favor of the insured" in a manner consistent with the reasonable expectations of the purchaser of the policy. *Cameron*, 733 A.2d at 968. The "first step in the con-

---

1. This is particularly appropriate in this case because the Maryland UM statute is basically the same as the D.C. statute. *Compare* D.C. CODE ANN. § 35–2406 *with* MD. CODE ANN., INS. § 19–509(c)(1) (both requiring UM coverage for insureds who are legally "entitled to recover [damages] from the owner[s] or operator[s] of [an] uninsured motor vehicle[s]").

struction of contracts is to determine 'what a reasonable person in the position of the parties would have thought the disputed language meant.'" *Id.* at 970 (quoting *District of Columbia v. C.J. Langenfelder & Son, Inc.,* 558 A.2d 1155, 1159 (D.C. 1989)); *see also Travelers Indem. Co. of Ill. v. United Food & Commercial Workers International Union,* 770 A.2d 978, 985–86 (D.C.2001). Words must be given their "common, ordinary and ... 'popular' meaning" and the "clear meaning will be adopted whether favorable to the insured or not." *Quadrangle Dev. Corp. v. Hartford Ins. Co.,* 645 A.2d 1074, 1075 (D.C. 1994) (quoting *Unkelsbee v. Homestead Fire Ins. Co. of Baltimore,* 41 A.2d 168, 170 (D.C.1945); *Medical Serv. of D.C. v. Llewellyn,* 208 A.2d 734, 736 (D.C.1965)).

The relevant provisions of the insurance contract issued to Donald W. Sigmund provide:

> we will pay for damages ... which an insured person is legally entitled to recover from the owner or operator of an

uninsured motor vehicle because of bodily injury or property damage:

1. sustained by an insured person;
2. caused by an accident;[2] and
3. arising out of the ownership, maintenance, or use of an uninsured motor vehicle.

(Def.'s Mem., Ex. 3 at 17.) As it is not disputed that the plaintiff was an insured person, and he sustained bodily injuries, the issues presented are: (1) whether the vehicle was uninsured; (2) whether the incident arose out of the ownership, maintenance, or use of an uninsured motor vehicle; and (3) whether the plaintiff is legally entitled to recover from the owner or operator of an uninsured motor vehicle.

### A. Uninsured Motor Vehicle

Plaintiff argues, citing cases from various states, that when a vehicle is used without permission for an impermissible purpose, an otherwise insured vehicle can be rendered uninsured for purposes of UM benefits.[3] *See, e.g., Comet Cas. Co. v.*

---

**2.** While there does not appear to be any guidance in this jurisdiction for determining whether the incident was "caused by an accident," authority from other jurisdictions is split as to whether the incident should be viewed through the eyes of the victim (likely making it unexpected and hence accidental) or through the eyes of the assailant (likely making it intentional and hence not accidental). *Compare Empire Mut. Ins. Co. v. Cona,* 40 A.D.2d 963, 338 N.Y.S.2d 480, 481 (N.Y.App.Div.1972) (holding that dragging police officer with car and knocking him to ground was intentional assault and not an accident) *with Leatherby Ins. Co. v. Willoughby,* 315 So.2d 553, 554–55 (Fla.Dist.Ct.App. 1975) (holding that intentional driving of truck into insured was an accident); *see also Coverage Under Uninsured Motorist Clause of Injury Inflicted Intentionally,* 72 A.L.R.3d 1161 (2005). Despite plaintiff's repeated and favorable citation of a case directly adverse to his position on this issue, *see Grabowski v. Liberty Mut. Ins. Co.,* 345 N.J.Super. 241, 784 A.2d 754, 757 (2001) (holding explicitly that accident is viewed from perspective of assail-

ant), the Court need not resolve this issue to decide the current motion.

**3.** Defendant argues that the vehicle cannot be uninsured because the insurance contract specifically excludes "any motorized vehicle or equipment: a. owned by [the insured] or a relative ... [or] g. shown on the Declarations page of [the insurance] policy." (Def.'s Mem., Ex. 3 at 19–20.) However, case law is divided as to whether a contract exclusion should control in this circumstance. *Compare State Farm Mut. Auto. Ins. Co. v. Nissen,* 851 P.2d 165, 167 (Colo.1993) (holding that exclusion for vehicle "insured under the liability coverage of this policy" could not apply because it conflicted with contract's broader definition of uninsured vehicle), *Carmichael v. Gov't Employees Ins. Co.,* 54 A.D.2d 140, 388 N.Y.S.2d 354, 356 (N.Y.App.Div.1976) (holding that exclusion for vehicle "owned by the named insured" did not apply because it was narrower than coverage required by statute), *and Progressive Ins. Co. v. Gondi,* No. Civ. A.04–2034, 2004 WL 2457734, at *5 (E.D.Pa. 2004) (holding exclusion identical to contract

*Jackson,* 125 Ill.App.3d 921, 81 Ill.Dec. 569, 467 N.E.2d 269, 271 (1984) (insured's vehicle was uninsured as to him when stolen); *Cox v. Russell,* 367 N.J.Super. 121, 842 A.2d 243, 245–46 (2004) (vehicle used without permission became uninsured); *Grabowski,* 784 A.2d at 755–56 (insured's vehicle became uninsured after theft); *Carmichael,* 388 N.Y.S.2d at 355–56 (insured's vehicle became uninsured when operated by unknown person); *see also* Wanda Ellen Wakefield, *Operation or Use of Vehicle Outside Scope of Permission as Rendering It Uninsured Within the Meaning of Uninsured Motorist Coverage,* 17 A.L.R.4th 1322 (2004). Because the uninsured status of the vehicle depends upon its unauthorized use, were the Court to accept plaintiff's argument, the only activities relevant to the analysis of the other issues in this case are those of the assailant. Obviously the plaintiff here used or operated the vehicle in the course of the bombing, but the plaintiff was a permissive user, and hence the vehicle was not uninsured with respect to the plaintiff. But as to this first issue, the Court need not resolve it but will assume *arguendo* that the assailant's unauthorized activities are sufficient to render the vehicle uninsured for the purposes of UM benefits and will proceed to consider the remaining two issues.

**B. Arising Out of the Ownership, Maintenance, or Use of an Uninsured Motor Vehicle**

 Under the terms of the insurance contract, in order to qualify for UM benefits, plaintiff's injuries must "aris[e] out of the ownership, maintenance, or use of an uninsured motor vehicle." (Def.'s Mem., Ex. 3 at 17.) As there is no claim that the injuries arose from the ownership or maintenance of an uninsured vehicle, the Court's analysis will be limited to the meaning of "arising out of the ... use of an uninsured automobile." Plaintiff contends that assailant's activities in bombing the car constitute "use" of the vehicle and this use caused his injuries. Although plaintiff is correct that the contract does not explicitly define the term "use," the meaning of the term in this context is unambiguous, and in light of the case law interpreting the term "use," the Court concludes that assailant's activities do not qualify as "use" of the vehicle within the meaning of the contract.

 Given the lack of D.C. law interpreting this phrase,[4] the Court will look to Maryland law for guidance. In order for plaintiff's injuries to arise out of the use of an uninsured vehicle, the vehicle must be "directly connected, causally, to the injury." *Harris v. Nationwide Mut. Ins. Co.,* 117 Md.App. 1, 699 A.2d 447, 454 (1997) (citing *Frazier v. Unsatisfied Claim and Judgment Fund Bd.,* 262 Md. 115, 277 A.2d 57, 59 (1971)). Conversely, if the "use of a motor vehicle is only incidentally connected, causally, to the injury, then the injury has not arisen out of the '... use' of a motor vehicle." *Id.* A "sufficient nexus" must exist between the injuries and the use of the vehicle, but the vehicle need not be the proximate cause. *Nat'l Indem. Co v. Ewing,* 235 Md. 145, 200 A.2d 680, 682 (1964). However, the "causal connection must be more than incidental, fortuitous, or but for." *Wright v. Allstate Ins. Co.,*

in this case violated public policy of insurance statute) *with State Farm Mut. Auto. Ins. Co. v. McCauley,* 921 F.2d 673, 676 (6th Cir.1990) (holding that exclusion of vehicle "insured under the liability coverage of this policy" did not conflict with purpose of uninsured motorist statute).

4. In *Tart v. Am. Nat'l Fire Ins. Co.,* 576 A.2d 1353 (D.C.1990), the Court of Appeals addressed the meaning of "arising out of the ... use of [a] motor vehicle" by application of North Carolina law.

128 Md.App. 694, 740 A.2d 50, 53–54 (1999).

Generally, when the victim's injuries are caused by a source independent of the vehicle, the connection is found to be merely incidental and insufficient to satisfy the requirement that the injury "arise out of" the use of the vehicle. Cases involving the use of guns are illustrative. In *Webster v. Gov. Employees Ins. Co.*, 130 Md. App. 59, 744 A.2d 578, 582 (2000), when a carjacker fired a gun into a fleeing vehicle, the resulting injuries were not found to have arisen out of the use of the vehicle. In *Wright v. Allstate Ins. Co.*, assailant waited at an intersection for the victim's vehicle to approach and fired a gun into the vehicle. Assailant's use of his own vehicle as transportation to the scene of the assault was found to be incidental to the injuries and not directly and causally connected. *Wright*, 740 A.2d at 52. The only difference between the gun cases and the case at bar is the weapon of choice. If the carjacker had threatened to detonate a bomb in the vehicle instead of brandishing a gun, although the location of the weapon would be more connected to the vehicle, the resulting injuries would not be any more connected to the *use* of the vehicle by the assailant.

Plaintiff unsuccessfully attempts to distinguish the gun cases in two ways. First, plaintiff argues that this case is distinguishable because here the assailant was, at one time, inside the vehicle. Second, plaintiff argues that the weapon used, or the instrumentality of the injury, was the vehicle itself, not separately identifiable bombs.

Plaintiff's attempt to distinguish this case because assailant was at one time inside the car is unpersuasive. Plaintiff argues that because assailant had to enter the vehicle in order to plant the bombs, this case is different from the gun cases in which the assailant was always outside of the vehicle. This distinction is both factually and legally inaccurate. In *Wright*, plaintiff sought to recover for assailant's use of his own vehicle as transportation to the scene of the assault. *Wright*, 740 A.2d at 52. The assailant had been physically inside the vehicle in question. The court nevertheless found the connection to the injuries incidental because, although the use of the vehicle was necessary in assailant's preparation for the assault, it had discontinued prior to the assault. *See id.* Similarly, in this case, although assailant may have used the vehicle when planting the bombs, that usage was merely a preparatory step to the assault, and it was discontinued when assailant exited the vehicle.

Furthermore, the physical location of assailant is not a legally relevant issue. In *Webster*, the court directly addressed the distinction between that case and other cases in which courts had found a direct connection to the injuries. The court noted that in each of those cases the assailant was the driver of a vehicle. *See Webster*, 744 A.2d at 582 ("Appellants rely on several other cases, all of which we must distinguish because each involved an assailant or tortfeasor who was a *driver*.") (emphasis in original); *see also Frazier*, 277 A.2d at 59 (holding that when an unidentified *driver* threw a firecracker into another vehicle, the injury arose out of the use of the vehicle); *Harris*, 699 A.2d at 455 (holding that when an unidentified *driver* grabbed victim's purse and dragged her with the car, injury arose out of the use of the vehicle). Although plaintiff is correct that in each of these cases the driver was by necessity inside the vehicle, it is the act of driving, not the physical location of the individual, that constitutes the use of a motor vehicle.

Plaintiff's argument that the vehicle itself should be considered the instrumental-

ity of his injuries is similarly unavailing. This interpretation would be a significant expansion of the law as it presently exists, for in each of the cases cited by plaintiff in which the vehicle is arguably the instrumentality of the injury, the vehicle alone caused the injuries due to its distinctive vehicular characteristics. Given the limitations on the Court's power when exercising diversity jurisdiction, it is unwilling to stretch the meaning of "use" to the extent proposed by plaintiff's novel argument.

For instance, in *Harris*, the assailant grabbed the victim's purse as he drove past her. Because the victim's arm was tangled in the purse, when the vehicle accelerated the victim was knocked to the ground and dragged. *Id.* at 448–49. The court found the use of the vehicle to be directly connected, causally, to the victim's injuries because without the vehicle, the victim's "injuries would have been much less extensive than they were." *Id.* at 455. Without the distinctive ability of the vehicle to move, the victim could not have been knocked to the ground or dragged. *See Jackson*, 81 Ill.Dec. 569, 467 N.E.2d at 269 (victim struck by *moving* vehicle); *Guiberson v. Hartford Cas. Ins. Co.*, 217 Mont. 279, 704 P.2d 68, 70 (1985) (victim jumped into and thrown from *moving* truck); *Grabowski*, 784 A.2d at 757–58 (victim thrown from *moving* vehicle); *Carmichael*, 388 N.Y.S.2d at 355 (victim struck by *moving* vehicle). In this case however, plaintiff's injuries were not caused by the vehicle itself; rather they were caused by the bombs placed in the vehicle. Had the bombs been placed in a suitcase rather than a vehicle, the extent of plaintiff's injuries could well have been the same, indicating further the incidental nature of the vehicle.

In fact, *State Farm Fire & Cas. Co. v. Rosenberg*, 319 Ill.App.3d 744, 253 Ill.Dec. 793, 746 N.E.2d 35 (2001), which plaintiff cites favorably (*see* Pl.'s Mem. at 12), em-phasizes the importance of distinctive vehicular characteristics in the instrumentality analysis. In *Rosenberg*, a carjacker was driving the stolen vehicle with the victim in the passenger seat when he shot her in the arm and head and pushed her from the moving vehicle. *Id.* at 36. The court held that the gun, *not* the vehicle, was the instrumentality of the injury and denied UM benefits because the injury did not arise out of the use of the vehicle. *Id.* at 40. In reaching this conclusion, the court distinguished *Dyer v. Am. Family Ins. Co.*, 159 Ill.App.3d 766, 111 Ill.Dec. 530, 512 N.E.2d 1071 (1987), a case with nearly identical facts except that the victim's injuries resulted from her legs hanging out the open passenger door of the vehicle, rather than from a gun shot. The court explained that in *Dyer* the injuries arose out of the use of the vehicle because they "were the direct result of the manner in which the uninsured motor vehicle was *driven.*" *Id.* at 38 (emphasis added). Like *Rosenberg*, this case can be distinguished from *Dyer* as well. Plaintiff's injuries are completely unrelated to the movement of the vehicle or the manner in which it was driven, and thus, the vehicle is not the instrumentality of the injury.

In order for the vehicle to be the instrumentality of the injury, the Court would have to view the instrument as a car-bomb rather than as bombs placed in a car. Such a distinction, however, is contrary to the case law that has addressed the use of a vehicle as a bombing device. For instance, in *Mayer v. State Farm Auto. Ins. Co.*, 944 P.2d 288 (Okla.1997), plaintiff attempted to recover uninsured motorist benefits from his insurer for injuries sustained from the Oklahoma City bombing under a contract with language identical to that in this case. The court held that the vehicle was not in use at the time of the bombing because it was not being used by the assailant as a motor vehicle for trans-

portation. *Id.* at 290–91. In *Watkins v. Cont'l Cas. Co.*, No. 92–1626, 1993 WL 127950, at *2–3 (4th Cir.1993), the court rejected plaintiff's argument that an abandoned vehicle was "used" to plant and conceal a bomb because it called for an abstract and disconnected definition of the term. In *Kraus v. Allstate Ins. Co.*, 258 F.Supp. 407, 411–12 (W.D.Pa.1966), when a car exploded on a city street injuring several pedestrians, the court held that the use of the vehicle as a bombing device was not in the contemplation of the contracting parties and would give the words "ownership, maintenance, and use" a strained or unnatural meaning. In fact, when the Maryland Court of Appeals adopted a framework for analyzing whether an injury arose from the use of a vehicle, it cited *Kraus* as an example of a situation that did not fall within the meaning of "use." *Frazier*, 277 A.2d at 59. The only distinction between these cases and the present case is that, here, the plaintiff was using the vehicle himself at the time of the bombing. However, as noted above, this is factually irrelevant because only the assailant's actions could render the vehicle uninsured.

Finally, as the insurance contract is written to satisfy the minimum requirements set forth by the D.C. statute, the statute may provide context to help explain the contract. The statute defines "maintenance or use" of a vehicle as "any activity involving or related to the operation of or transportation by a motor vehicle, including occupying, entering into, alighting from, repairing, or servicing." D.C. CODE ANN. § 31–2402(14). Despite the breadth of this definition, "maintenance and use" are limited to activities that are directly related to the vehicle as a means of transportation and do not include the vehicle as a means of bombing. Although the assailant likely occupied, entered into, and alighted from the vehicle, at the time of the plaintiff's injury those activities had been completed. The only ongoing activity was the "use" of the vehicle as a bombing device, an activity excluded from the statutory definition of "maintenance and use."

Therefore, plaintiff's injuries do not arise from the assailant's ownership, maintenance, or use of an uninsured motor vehicle, and UM benefits do not apply.

## C. Legally Entitled to Recover from the Owner or Operator of an Uninsured Motor Vehicle

Even if the Court were to accept plaintiff's novel argument that assailant's bombing of the vehicle constituted "use," plaintiff could still not prevail because he is not legally entitled to recover damages from the "owner or operator of an uninsured motor vehicle," as required by both the insurance contract and D.C. CODE ANN. § 35–2106(f)(2). Although the term "operator" is undefined in the contract, its meaning is unambiguous in the context of this case. As the only relevant person that plaintiff could legally recover from is Prescott Sigmund, and he neither owned nor operated the vehicle, plaintiff does not qualify for UM benefits for this reason as well.

In interpreting the contract, the Court must consider the intention of the parties when they entered into the agreement as it is expressed through the language of the insurance contract. *Aetna Cas. & Sur. Co. v. State Farm Mut. Auto. Ins. Co.*, 380 A.2d 1385, 1387 (D.C.1977). Focusing on the term "operator," one definition is "[a] person who drives a motor vehicle." OXFORD ENGLISH DICTIONARY. But it is not alleged that the assailant drove the vehicle, and at the time of plaintiff's injuries, the only driver was the plaintiff himself.

Furthermore, the D.C. statute, with which the insurance contract was written

to comply, shares identical language and defines the term "operator" as "a person who drives or is in actual physical control of a motor vehicle or who is exercising control over or steering a motor vehicle being pushed or towed by a motor vehicle." D.C. Code Ann. § 31–2402. Although this is broader than the dictionary definition, the emphasis is still on an operator's control over the movement of the vehicle. This is consistent with the requirement that an injury arise from the use of the vehicle due to its vehicular characteristics, and it precludes the assailant from being considered an operator solely because of his placement of the bombs in the vehicle.

Finally, case law from other jurisdictions has recognized that "operation" is narrower than "use":

> The terms *"use"* and *"operation"* are not synonymous .... [T]he *"use"* of an automobile by an individual involves its employment for some purpose or object of the user while its *"operation"* by him involves his direction and control of its mechanism as its driver for the purpose of propelling it as a vehicle .... Although one who operates an automobile obviously uses it, one can use an automobile without operating it.

*Cameron Mut. Ins. Co. v. Chitwood*, 609 S.W.2d 492, 494 (Mo.App.1980). In this case, even if Prescott Sigmund used the vehicle to place bombs in it, he did not drive or control the vehicle in a way that could possibly make him the driver. *See Watkins*, No. 92–1626, 1993 WL 127950, at *2 (rejecting argument that vehicle was "operated" to injure plaintiff by planting of bomb in it).

Therefore, as to the third issue before the Court, it concludes that plaintiff is not legally entitled to recover damages from the owner or operator of an uninsured motor vehicle because Prescott Sigmund was not an owner or operator, and thus,

for this reason as well, UM benefits do not apply.

## CONCLUSION

For the reasons stated above, the Court finds that plaintiff has failed to state a valid claim for breach of contract, and therefore, it grants defendant's motion to dismiss. A separate order accompanies this Memorandum Opinion.

## *ORDER*

Upon consideration of defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment and plaintiff's opposition thereto; it is this 31st day of May, 2005, hereby

**ORDERED** that the motion is **GRANTED** and the above-captioned complaint is **DISMISSED WITH PREJUDICE.**